**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CAROL KANE and BONNIE WILSON, *on behalf of themselves and all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF ROCHESTER,<br><br>Defendant. | Case No. 6:23-cv-06027 |

# MEMORANDUM OF LAW IN OPPOSITION DEFENDANT UNIVERSITY OF ROCHESTER'S RULE 12(b)(6) MOTION TO DISMISS

**WEITZ & LUXENBERG, PC**
James J. Bilsborrow
(New York Bar No. 4702064)
700 Broadway
New York, NY 10003
(212) 558-5500
jbilsborrow@weitzlux.com

**ALMEIDA LAW GROUP LLC**
David S. Almeida (*pro hac vice* pending)
(New York Bar No. 3056520)
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com

*Counsel for Plaintiffs & the Class*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ iii

PRELIMINARY STATEMENT ........ 1

FEDERAL RULE 12(b)(6) STANDARD ........ 7

ARGUMENT ........ 7

I. PLAINTIFFS ADEQUATELY ALLEGE COMMON LAW CLAIMS FOR BREACH OF FIDUCIARY DUTY, IMPLIED CONTRACT, EXPRESS CONTRACT, BAILMENT & UNJUST ENRICHMENT. ........ 7

A. Plaintiffs' Breach of Fiduciary Duty, Implied Contract & Bailment Claims are *Not* "Subsumed" by Their Breach of Confidence Claim. ........ 8

B. Plaintiffs Have Stated Plausible Claims for Breach of Implied Contract, Fiduciary Duty, and Bailment. ........ 9

i. Plaintiffs State a Claim for Breach of Implied Contract. ........ 10

ii. Plaintiffs State a Viable Bailment Claim. ........ 11

iii. Plaintiffs State a Claim for Breach of Fiduciary Duty. ........ 12

C. Plaintiffs State a Breach of Confidence Claim. ........ 12

D. Plaintiffs State a Claim for Breach of Contract. ........ 15

i. URMC's HIPAA Notice Applies to PHI Collected, Used & Disclosed "Via the Ethers of the Internet." ........ 16

ii. Plaintiffs Have Reciprocal Obligations. ........ 17

iii. URMC's Exculpatory Clause Does Not Exonerate Its Unlawful Conduct. ........ 17

E. Plaintiffs Plausibly Allege the Elements of Their Unjust Enrichment Claim, Including Actual Detriment. ........ 19

II. PLAINTIFFS HAVE ADEQUATELY ALLEGED THEIR G.B.L. § 349 CLAIM. ........ 21

III. PLAINTIFFS PLEAD A PLAUSIBLE CLAIM AGAINST URMC UNDER THE "CRIMINAL OR TORTIOUS" EXCEPTION TO THE ELECTRONIC COMMUNICATIONS PRIVACY ACT (ECPA). ........ 23

CONCLUSION......................................................................................................................25

# TABLE OF AUTHORITIES

***Page(s)***

***Cases***

*Abramowitz v. NYU Dental Ctr. Coll. Of Dent.*,
494 N.Y.S.2d 721 (2d Dep't 1985)........18

*Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*,
784 F. Supp. 2d 296 (S.D.N.Y. 2011)........11

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016)........22

*In re Anthem Inc. Data Breach Litig.*,
No. 15-MD-0261-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016)........17, 19, 20

*In re AOL Time Warner, Inc. Sec. Litig.*,
503 F. Supp. 2d 666 (S.D.N.Y. 2007)........7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........7

*Astroworks, Inc. v. Astroexhibit, Inc.*,
257 F. Supp. 2d 609 (S.D.N.Y. 2003)........8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........7

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)........23

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)........23, 24, 25

*Catalano v. BMW of N. Am., LLC*,
167 F. Supp. 3d 540 (S.D.N.Y. 2016)........21

*Chanko v. Am. Broad Cos. Ins.*,
27 N.Y.S.3d 46 (N.Y. 2016)........13

*Daly v. Metro Life Ins. Co.*,
4 Misc.3d 887 (Sup. Ct. N.Y. Cty. 2004)........14

*DeSousa v. March of Dimes Found.*,

2012 N.Y. Slip Op. 30395 (N.Y. Sup. Ct. 2012) ....................18

*Doe v. Cmty. Health Plan-Kaiser Corp.*,
268 A.D.2d 183 (3d Dep't 2000) ....................13, 14

*Doe v. Guthrie Clinic, Ltd.*,
22 N.Y.3d 480 (N.Y. 2014) ....................14

*Faber v. Metro Life Ins. Co.*,
648 F.3d 98 (2d Cir. 2011) ....................7

*Fedell v. Wierzbieniec*,
127 Misc. 2d 124 (N.Y. Sup. Ct. 1985) ....................8, 9

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ....................16, 22

*In re GE/CBPS Data Breach Litig.*,
20-CV-2903-KPF, 2021 WL 34063741 (S.D.N.Y. Aug. 4, 2021) ....................10

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................25

*Hoffmann v. Major Model Mgmt.*,
1:20-CV-6941-LTS-JLC, 2022 WL 992795 (S.D.N.Y. Mar. 31, 2022) ....................12

*Imaging Int'l v. Hell Graphic Sys., Inc.*,
2006 N.Y. Slip Op. 30688 (N.Y. Sup. Ct. 2006) ....................17

*Javier v. Assurance IQ, LLC*,
No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) ....................18

*Jemzura v. Jemzura*,
36 N.Y.2d 496 (N.Y. 1975) ....................10

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) ....................20

*Manning v. US DOJ*,
2017 U.S. Dist. LEXIS 207427 (S.D.N.Y. Dec. 15, 2017) ....................7

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) ....................25

*In re Meta Pixel Healthcare Litig.*,
- F. Supp. 3d - , 2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ....................1, 23

*Miller v. Syracuse Univ.*,
No. 21-CV-1073-LEK/TWD, 2023 WL 2572937 (N.D.N.Y. Mar. 20, 2023) ................ passim

*Monahan v. Lewis*,
51 A.D.3d 1308 (3d Dep't 2008) ..........................................................................11

*Mount v. PulsePoint*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016) ...................................................20, 21

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015)...................................................................................21

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
647 N.E.2d 741 (N.Y. 1995)...................................................................................21

*Sackin v. Transperfect Global, Inc.*,
278 F. Supp. 3d 739 (S.D.N.Y. 2017)......................................................................10

*Spinelli v. Nat'l Football League*,
903 F.3d 185 (2d Cir. 2018)...................................................................................12

*Stutman v. Chem. Bank*,
731 N.E. 2d 608 (N.Y. 2000)...................................................................................21

*United States of America v. Easy Healthcare Corporation*,
No. 23-cv-03107, Dkt. No. 1 (N.D. Ill. May 17, 2023) ...............................................5

*Wallace v. Health Quest Systems, Inc.*,
No. 20-CV-545-VB, 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) .............................. passim

***Statutes and Rules***

42 U.S.C. § 1320(d)(6) ....................................................................................23, 24

Electronic Communications Privacy Act, 18 U.S.C. § 2511(1) ........................................23

Fed. R. Civ. P. 12(b)(6).............................................................................................7

Fed. R. Civ. P. 15(a)(2)...........................................................................................25

New York General Business Law § 349 .................................................................6, 21

***Secondary Sources***

Black's Law Dictionary (11th ed. 2019)....................................................................11

## PRELIMINARY STATEMENT

It is incredibly disappointing—to put it mildly—that the University of Rochester (referred to herein as "URMC"), an institution that boldly (and frequently) proclaims to value the privacy and security of the protected health information ("PHI") and other individually identifiable health information ("IIHI") that patients and users ("Users") of its website and/or its patient portal provide, so cavalierly dismisses its violations of the Health Insurance Portability and Accountability Act ("HIPAA"). By its motion to dismiss, URMC does ***not*** deny using the Facebook Pixel to collect and to disclose Users' PHI and IIHI without disclosure or consent. Rather, in order to avoid judicial scrutiny of its unlawful practices, URMC takes the rather preposterous position that even though the University disclosed a host of confidential and sensitive information in violation of HIPAA, such disclosures were of no concern because the information disclosed was "scrambled up jumble[s] of internet code." (Dkt. No. 11, MTD at 2.)

URMC is saying the quiet part out loud; that is, while it wants to give lip service to how much it values its patients and will do everything in its power to protect Users' PHI and IIHI, what it means to say—and has tacitly acknowledged in its motion to dismiss—is that it values and prioritizes generating revenue and maximizing profits over Users' privacy and security.[1] Lest there

[1] In fact, at a hearing in the *In re Facebook Pixel Tracking* litigation, Facebook stated that that it requires companies that use the Pixel tool to post a prominent notice on every page where the tool is embedded and to link that notice to information about how the Pixel works and what data it collects. Facebook also stated that it tells health care providers ***not*** to send sensitive data, and that the Pixel tool allows website developers to gather valuable analytics information about people who visit their sites. URMC did not post such a notice because it knew that Users would be less likely to use its Website and/or Portal and thus it would not be able to access and to monetize their PHI and IIHI. *See* Transcript of the argument on Plaintiff's Motion for Preliminary Injunction in *In re Meta Pixel Healthcare Litigation*, Case No. CV-22-03580-WHO (N.D. Cal. Nov. 9, 2022) (Hon. J. Orrick), attached hereto as Exhibit A, at 19:12-18; *see also In re Meta Pixel Healthcare Litig.*, - F.Supp.3d - , 2022 WL 17869218 (N.D. Cal. Dec 22, 2022).

be any doubt about that, URMC argues that *all* the statements in its Privacy Policy have no enforceability whatsoever because "use of the site is entirely at [Users'] own risk, and in no event will URMC be liable for any damages ... or liabilities arising out of or relating in way to this service...." (MTD at 7 (citing Ex. B, Privacy Policy).)

Rather than acknowledging that the sensitive information transmitted through its website is more than merely "scrambled up jumble[s] of internet code," URMC suggests this data is useful only if some "enterprising third-party data technology company—in this case, Facebook—could *theoretically* take this information and figure out that a certain person made a certain search on URMC's website at a certain time." (MTD at 2 (emphasis added).) But this cavalier suggestion is revealing; URMC installed the Pixel for the very purpose of sharing PHI and IIHI with Facebook so that Facebook could combine that information with those Users' Facebook profiles and create very robust consumer profiles to, among other things, serve those Users' targeted advertisements regarding their sensitive medical conditions. The list of data privacy and security violations by Facebook is long, and yet URMC chose to share Users' PHI and IIHI with.[2]

While URMC repeatedly resorts to distortion and obfuscation of the straightforward allegations set forth in Plaintiffs' First Amended Complaint ("FAC"), the truth of the matter is that URMC made the conscious decision to use certain tracking technologies to collect and to disclose Users' PHI and IIHI for marketing and analytics purposes. And, as alleged in the FAC, the Pixel

[2] *See* Adam Satariano, *Meta Fined $1.3 Billion for Violating E.U. Data Privacy Rules*, NEW YORK TIMES (May 22, 2023), available at https://www.nytimes.com/2023/05/22/business/meta-facebook-eu-privacy-fine.html (last visited May 31, 2023); *see also* Michael X. Heiligenstein, *Facebook Data Breaches: Full Timeline Through 2023*, NEW YORK TIMES (May 10, 2023), available at https://firewalltimes.com/facebook-data-breach-timeline/ (last visited May 31, 2023). This Court will only have to go as far back as earlier this month to find that Facebook was fined a record $1.3 billion and ordered to stop transferring data collected from Facebook users in Europe to the United States.

that URMC put on its Website and Portal tracks people and the type of actions they take as they interact with a website (or other digital property), including how long a person spends on a particular web page, which buttons they click, which pages they view and the text or phrases they type into various portions of the website (such as a general search bar, chat feature or text box), among other things. That is, what URMC is claiming is "scrambled up jumble of internet code" is valuable information about Users and their confidential health conditions. That information has pecuniary value to URMC and to Facebook, which is why it installed the Pixel in the first place.

Not only does URMC utilize the Facebook Pixel to capture and monetize Users' information, it also makes no disclosures to patients that it is pursuing such conduct. Even worse, URMC has made false representations in its Privacy Policy and Notice of Privacy Practices. For instance, URMC states that it "[a]nyone can visit and browse our entire website at any time without providing any protected health information," "[w]e do not collect information that would personally identify you unless you choose to provide it" and "[w]e [] do not share any visitor's protected health information with any third party unrelated to URMC, except in situations where we must provide information for legal purposes or investigations, or if so directed by the patient through a proper authorization." Plaintiffs allege that these representations are false and misleading. Similarly, with respect to URMC's Notice of Privacy Practices, which applies to PHI that URMC collects, Plaintiffs allege that numerous statements in that Notice are false, such as URMC's pledge to "[m]ake sure that medical information that identifies you is kept private." Moreover, URMC has ***not*** notified Users of the disclosure of their unsecured PHI (*i.e.*, a data breach) as it covenants to do in its Notice. Notably, numerous covered entity health care

corporations issued notices of improper data disclosure after it was revealed they were utilizing the very same Pixel in the same way as URMC, resulting in the disclosure of PHI and IIHI.[3]

As detailed in the FAC, URMC resorts to outright distortions and misrepresentations to make its unlawful conduct appear to be "much ado about nothing." Fortunately for Plaintiffs and all other users of URMC's Website and Portal, the Office for Civil Rights at the Department of Health and Human Services ("OCR") does not think that the intentional disclosure of PHI and IIHI is a trivial matter; rather, OCR has made it clear that:

> **Regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules.** For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.[4]

Moreover, the Federal Trade Commission ("FTC") likewise does not think the use of tracking technologies to disclose PHI to third parties is an insignificant matter. For instance, the FTC recently took enforcement action against GoodRx and BetterHelp, two digital healthcare platforms, for allegedly sharing user health data with third parties for advertising. Both cases

---

[3] *See, e.g., Cerebral, Inc. Notice of HIPAA Privacy Breach*, available at https://cerebral.com/static/hippa_privacy_breach-4000c6eb21449c2ecd8bd13706750cc2.pdf (last visited May 8, 2023); *Advocate Aurora says 3M patients' health data possibly exposed through tracking technologies* (Oct. 20, 2022), available at https://www.fiercehealthcare.com/health-tech/advocate-aurora-health-data-breach-revealed-pixels-protected-health-information-3 (last visited May 8, 2023); *Novant Health notifies patients of potential data privacy incident* (Aug. 12, 2022), available at https://www.novanthealth.org/home/about-us/newsroom/press-releases/newsid33987/2672/novant-health-notifies-patients-of-potential-data-privacy-incident-.aspx (last visited May 8, 2023).

[4] *See* FAC, ¶ 25 citing OIG's *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* bulletin (emphasis added).

highlight the use of third-party tracking pixels, which enable platforms to amass, analyze and infer information about users' activity.[5]

The unilateral disclosure of such PHI is unquestionably a violation of HIPAA, among other statutory and common laws.[6] In addition to its overarching suggestion that the surreptitious collection and disclosure of Users' PHI and IIHI is "no big deal," URMC manufactures a novel argument that Plaintiffs' common law claims for breach of implied contract, breach of fiduciary duty, and bailment are somehow preempted or precluded by their separate claim for breach of confidence. Simply put, Plaintiffs' well-pleaded common law claims of breach of fiduciary duty, implied contract and bailment are not precluded by their breach of confidence claim.

URMC further contends that it could not possibly have breached its common law duty of confidentiality because Plaintiffs do not allege that a specific or "actual URMC physician violated their confidences in any way and the alleged disclosures occurred via the 'ethers of the Internet.'" (*See* MTD at 11). URMC does not point to a single case standing for the proposition that it—a covered entity under HIPAA—is not responsible for maintaining the confidentiality of Plaintiffs'

---

5 *See Lurking Beneath the Surface: Hidden Impacts of Pixel Tracking, A deep dive into the technical side of FTC's recent cases on digital health platforms, GoodRx & BetterHelp*, by The FTC Office of Technology (March 16, 2023), available at https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2023/03/lurking-beneath-surface-hidden-impacts-pixel-tracking (last visited May 30, 2023). The FTC also recently filed a complaint against Easy Healthcare Corporation asserting that the use of the very same tracking technologies used by URMC constituted an unfair and deceptive practice under Section 5 of the FTC Act. *See United States of America v. Easy Healthcare Corporation*, No. 23-cv-03107, Dkt. No. 1 (N.D. Ill. May 17, 2023).

6 The HIPAA Privacy Rule sets forth policies to protect all IIHI that is held or transmitted by a covered entity or business associate such as URMC. These are the 18 HIPAA Identifiers that are considered personally identifiable information because this information can be used to identify, contact or locate a specific person or can be used with other sources (such as a person's Facebook account) to identify a single individual. When IIHI is used in conjunction with one's physical or mental health or condition, health care and/or one's payment for that health care, it becomes PHI.

and Class Members' PHI and/or IIHI. URMC instead attempts to re-cast Plaintiffs' breach of confidence claim to argue that since the "alleged disclosure of medical information in this case does not occur through human beings" (*i.e.*, physicians), but rather "through computer web servers and web browsers over the ethers of the Internet," Plaintiffs have not pled the "elements of a cause of action for breach of physician-patient confidentiality." (*Id.*) But the fact that URMC's breach of Plaintiffs' (and class members') confidences occurred via the use of tracking technologies on its Website and Portal does not in any way affect the legal viability of their claim. New York law recognizes breach of confidence as an independent tort, which may be violated through unlawful disclosures through the Internet.

URMC's remaining arguments must also be rejected as Plaintiffs have pointed to numerous misleading and false statements sufficient to maintain their General Business Law ("G.B.L.") § 349 claim, and Plaintiffs have adequately alleged that URMC intended to divulge the confidential information collected in violation of HIPAA and therefore the exception to the Electronic Communication Privacy Act ("ECPA") one-party consent rule applies. At the end of the day, Plaintiffs have alleged viable common law and statutory claims to address URMC's divulgence of their confidential PHI and IIHI under circumstances that led Judge William Orrick, presiding over a recent hearing in the *In re Facebook Pixel Tracking* case, to remark that "I think that is a kind of thing that a reasonable Facebook user would be shocked to realize" and "[i]f what the plaintiffs are saying is true … I think it's a big problem that there's not a specific consent." Here, URMC does not argue that there was consent because Users were completely unaware that their PHI and IIHI were being collected and disclosed. In short, URMC's motion to dismiss should be denied.

## FEDERAL RULE 12(b)(6) STANDARD

To withstand a motion to dismiss, a complaint must contain sufficient factual matter—accepted as true—to state a claim to relief that is plausible on its face. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678; *see also In re AOL Time Warner, Inc. Sec. Litig*., 503 F. Supp.2d 666, 670 (S.D.N.Y. 2007) (stating that "touchstone for a well-pleaded complaint [] is plausibility") (citing *Twombly*, 550 U.S. at 560-61). In deciding a Rule 12(b)(6) motion, a court should "draw all reasonable inferences in Plaintiff[s'] favor, 'assume all well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v. Metro Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678); *see also Manning v. US DOJ*, 2017 U.S. Dist. LEXIS 207427, at *3 (S.D.N.Y. Dec. 15, 2017) (stating that when deciding a motion to dismiss for failure to state a claim, the court accepts the factual allegations in the complaint as true).

## ARGUMENT

### I. PLAINTIFFS ADEQUATELY ALLEGE COMMON LAW CLAIMS FOR BREACH OF FIDUCIARY DUTY, IMPLIED CONTRACT, EXPRESS CONTRACT, BAILMENT & UNJUST ENRICHMENT.

By their Amended Complaint, Plaintiffs assert common law claims for Breach of Fiduciary Duty, Breach of Confidence, Implied Contract, Express Contract, Invasion of Privacy, Bailment and Unjust Enrichment under New York law. (*See* FAC, CLAIMS, ¶¶ 210-269.)[7] In support of their request to dismiss these claims, URMC asserts several ill-fitting and facially untenable

---

[7] Plaintiffs withdraw their common law invasion of privacy claim. (FAC, ¶¶ 210-221).

arguments. As detailed below, none of these putative bases for dismissal are legally supported and they should be rejected.

### A. Plaintiffs' Breach of Fiduciary Duty, Implied Contract & Bailment Claims are *Not* "Subsumed" by Their Breach of Confidence Claim.

Perhaps cognizant that it does not have ***any*** basis to seek dismissal of Plaintiffs' Breach of Fiduciary Duty, Implied Contract and Bailment claims, URMC does ***not*** challenge the plausibility or the pleading of these claims. That is, rather than argue that Plaintiffs have not stated plausible and well-pled claims, URMC posits a manufactured and convoluted argument that these common law claims "should be dismissed because they are all grounded in the same basic alleged breach of physician-patient confidentiality as their claims for breach of confidence. The claims are therefore subsumed by that claim." (MTD at 9.)

URMC is wrong for several reasons. First, and as detailed below, Plaintiffs do *not* assert a claim for "breach of physician-patient confidentiality," as URMC wants this Court to believe to support its argument that such claims are only viable against actual human beings, *i.e.*, physicians, and not healthcare entities like Defendant. (*See* MTD at 11 (stating that "the alleged disclosure of medical information at issue in this case does not occur through human beings").)

Second, Plaintiffs are certainly permitted to plead alternative claims or theories of liability based on the same or similar factual allegations. *See, e.g.*, *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F.Supp.2d 609, 621 (S.D.N.Y. 2003) (stating that "the fact that [plaintiff] may only *recover* on one claim certainly does not preclude [plaintiff] from *pleading* both").

Third, and most fundamentally, URMC's argument is merely a recapitulation of the history of breach of confidence claims under New York law and a distortion of various holdings. (*See* MTD at 9-10.) For instance, URMC cites *Fedell v. Wierzbieniec*, 127 Misc. 2d 124, 126 (N.Y. Sup. Ct. 1985), a "slip and fall" case, for the supposedly universal proposition that a breach of

confidence invariably subsumes other common law claims of breach of implied contract, bailment and breach of fiduciary duty. (*See* MTD at 9 (citing *Fedell* for the proposition that "any other causes of action are inappropriate to remedy this same basic alleged harm"). Simply put, there is no universal prohibition on asserting other common law claims based on the same or similar factual allegations. To be sure, *Fedell* did not even involve bailment or breach of fiduciary claims, and the language cited by URMC (in bold, no less) does *not* stand for the proposition that other common law claims are subsumed by a breach of confidence. Rather, that language merely reflects the fact that *in that case* the breach of implied contract was untenable.

In *Wallace v. Health Quest Systems*, *Inc.*, an analogous data breach class action, Judge Bricetti denied in relevant part defendant's motion to dismiss common law claims of bailment, breach of confidence, implied contract and breach of fiduciary duty claims, among others. *See* No. 20-CV-545-VB, 2021 WL 1109727, at *15 (S.D.N.Y. Mar. 23, 2021). There was no finding or concern by the Court that these common law claims—all premised on allegations that defendant failed to implement reasonable data security measures to prevent a ransomware attack resulting in the disclosure of plaintiff's PHI—were in any way duplicative or untenable because plaintiff had also alleged a breach of confidence claim. *See id.* at *13 (stating that "the Court has already determined plaintiffs plausibly allege they suffered cognizable damages sufficient to support claims sounding in tort" and "the Court denies defendant's motion to dismiss plaintiffs' claim for breach of confidence . . . ."); *see also Miller v. Syracuse Univ.*, No. 21-CV-1073-LEK/TWD, 2023 WL 2572937, at *22 (N.D.N.Y. Mar. 20, 2023) (finding alternative common law theories viable in an analogous data breach class action).

### B. Plaintiffs Have Stated Plausible Claims for Breach of Implied Contract, Fiduciary Duty & Bailment.

As mentioned above, Plaintiffs' breach of fiduciary duty, breach of confidence, implied

contract and bailment claims are well-pleaded, and URMC does not assert anything to the contrary.

*i. Plaintiffs State a Claim for Breach of Implied Contract.*

Under New York law, "[a] contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the 'presumed intention of the parties as indicated by their conduct." *Jemzura v. Jemzura,* 36 N.Y.2d 496, 503-04 (N.Y. 1975) (internal citations omitted); *Sackin v. Transperfect Global, Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) ("An implied contract, like an express contract, requires 'consideration, mutual assent, legal capacity and legal subject matter.'").

Plaintiffs have adequately alleged the elements of a breach of implied contract claim under New York law. (*See* FAC, ¶¶ 112-123 & ¶¶ 248-50.) These allegations suffice to state a claim for breach of implied contract under New York law. *See Wallace*, 2021 WL 1109727 at *11 ("The terms of the Notice of Privacy Practices, along with the notices defendant posted on its website, support an inference that [defendant] intended to be bound by its obligation to safeguard plaintiffs' Private Information."); *Miller*, 2023 WL 2572937 at *20 ("Plaintiff has alleged several facts, other than the Privacy Policy itself, that plausibly state a claim for breach of an implied contract.").[8]

Finally, and to the extent that URMC contends that any implied contract is unenforceable or nonexistent because there are no concomitant or reciprocal obligations on Plaintiffs, that argument is unavailing as Plaintiffs need not plead the implied contract's precise terms to survive a motion to dismiss as they do not have the benefit of the contracts (admissions contracts, for

---

[8] *See also In re GE/CBPS Data Breach Litig.*, 20-CV-2903-KPF, 2021 WL 34063741, at *9 (S.D.N.Y. Aug. 4, 2021) (denying motion to dismiss breach of implied contract claim because "[t]hese allegations are sufficient at this stage to establish the existence of an implied contract"); *Sackin, Inc.*, 278 F. Supp.3d at 749-750 (holding that plaintiffs' allegations of "conduct and a course of dealing'" raised "a strong inference of implied contract" where the defendant "required and obtained the PII as part of the [underlying] relationship, evincing an implicit promise by [defendant] to act reasonably to keep [plaintiffs'] PII safe").

instance, which likely incorporate URMC's Privacy Policy and HIPAA notice). *See Monahan v Lewis*, 51 A.D.3d 1308, 1310 (3d Dep't 2008). Plaintiffs' well-pleaded allegations give rise to an inference that contracts exist and URMC breached those implied contracts by collecting and disclosing Users' PHI and IIHI without consent. *See, e.g.*, *Wallace,* 2021 WL 1109727 at *11.

*ii. Plaintiffs State a Viable Bailment Claim.*

A bailment is the delivery of personal property by a bailor to a bailee who holds the property for a certain purpose. *See, e.g.*, *Wallace*, 2021 WL 1109727 at *13 (citing *Bailment*, BLACK'S LAW DICTIONARY (11th ed. 2019). Under New York law, a constructive bailment arises when a defendant takes lawful possession of the property of another and has a duty to account for that property, without intending to appropriate it. *See, e.g.*, *Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 307 (S.D.N.Y. 2011).

Plaintiffs state a claim for breach of bailment as they allege that URMC "acquired and was obligated to safeguard the Private Information of Plaintiffs and Class Members." (FAC, ¶ 262.) Plaintiffs further allege that URMC "accepted possession and took control of Plaintiffs' and Class Members' Private Information under such circumstances that the law imposes an obligation to safeguard the property of another." (*Id.*, ¶ 263.) Plaintiffs contend that URMC "breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class Members' Private Information, resulting in the unlawful and unauthorized access to, disclosure and misuse of such Information by third parties such as Facebook." (*Id.*, ¶¶ 267-68.) The fact is that URMC came into possession of Plaintiffs' Private Information under circumstances by which it had an obligation to safeguard and to protect that data and it unquestionably did not do so. *See Ancile Inv. Co., Ltd.*, 784 F. Supp.2d at 307; *Wallace*, 2021 WL 1109727 at *14.

*iii. Plaintiffs State a Claim for Breach of Fiduciary Duty*

In order to state a breach of fiduciary duty claim under New York law, a plaintiff must plead: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty and (iii) damages resulting therefrom. *See, e.g., Spinelli v. Nat'l Football League*, 903. F.3d 185, 207 (2d Cir. 2018) (citation omitted). Plaintiffs have adequately pled their Breach of Fiduciary Duty claim in that they allege that "[a] relationship existed between Plaintiffs and Class Members on the one hand and URMC on the other in which Plaintiffs and Class Members put their trust in URMC to protect the Private Information of Plaintiffs and Class Members, and URMC accepted that trust." (FAC, ¶ 233.) Plaintiffs further allege that URMC "breached the fiduciary duty that it owed to Plaintiffs and Class Members by failing to act with the utmost good faith, fairness, and honesty, failing to act with the highest and finest loyalty, and failing to protect, and intentionally disclosing, the Private Information of Plaintiffs and Class Members." (*Id.*, ¶ 234.)[9] *See also Hoffmann v. Major Model Mgmt.*, 1:20-CV-6941-LTS-JLC, 2022 WL 992795, at *5 (S.D.N.Y. Mar. 31, 2022) (denying defendant's motion to dismiss plaintiff's claim for breach of fiduciary duty in a data breach context & citing supporting cases).

**C. Plaintiffs State a Breach of Confidence Claim.**

Next, URMC attempts to recast Plaintiffs' Breach of Confidence claim as a "Breach of Physician-Patient Confidence" to manufacture an argument—albeit one that is contrary to New York law—that only actual physicians (and not a healthcare entity) may be liable for breaches of confidences. (*Compare* FAC, ¶¶ 255-260, *with* MTD at 10-12 (stating that this "Court should reject

[9] URMC, as a healthcare provider, unquestionably was aware that it owes a fiduciary duty to Plaintiffs to keep their PHI and IIHI secure. URMC breached this fiduciary duty by knowingly deploying the Pixel. In other words, URMC understood and acknowledged its duty to keep its Users' PHI and IIHI confidential, yet it still knowingly gave that information to Facebook without its patients' written permission in breach of its fiduciary duty of confidentiality.

Plaintiffs' Claim for Breach of Physician-Patient Relationship").) URMC does so to argue that since the "alleged disclosure of medical information in this case does not occur through human beings" (*i.e.*, physicians), but rather "through computer web servers and web browsers over the ethers of the Internet," Plaintiffs have not pled the "elements of a cause of action for breach of physician-patient confidentiality." (*Id.* at 11 (citing *Chanko v. Am. Broad Cos. Ins.*, 27 N.Y.S.3d 46, 53-54 (N.Y. 2016) for elements of breach of physician-patient confidentiality claim.)[10]

The fact that URMC's breach of Plaintiffs' (and class members') confidences occurred via the use of tracking technologies on its Website and Portal does not in any way affect the legal viability of their claim. New York law recognizes breach of confidence as an independent tort, although one that may only protect a patient's medical information. Judge Bricetti's recent opinion in *Wallace v. Health Quest Systems* puts to rest the viability of URMC's position:

> Nevertheless, [the] duty [of confidentiality] has been extended ***beyond the physician-patient context to healthcare corporations*** because the cloak of confidentiality wraps around more than the health care professional who renders . . . services.

2021 WL 1109727 at *12 (S.D.N.Y. Mar. 22, 2021) (emphasis added) (citing *Doe v. Cmty. Health Plan-Kaiser Corp.*, 268 A.D.2d 183, 186 (3d Dep't 2000) (reversing grant of summary judgment and finding action for breach of confidence sustainable against healthcare corporation). In so holding, Judge Bricetti noted that the New York Court of Appeals has stated:

> A medical corporation may . . . be liable in tort for failing to establish adequate policies and procedures to safeguard the confidentiality of patient information or to train their employees to properly discharge their duties under those policies and procedures. Those potential claims provide the requisite incentive for medical providers to put

---

10 URMC's argument that a breach of patient confidences can only occur through physicians and not by healthcare entities or corporations would eviscerate the obligations that HIPAA puts on these covered entities. There is simply no legal or logical reason to entertain URMC's argument. URMC does not point to a single case standing for the proposition that it—a covered entity under HIPAA—is not responsible for maintaining the confidentiality of Plaintiffs' Private Information.

> in place appropriate safeguards to ensure protection of a patient's confidential information.

*Id.* (citing *Doe v. Guthrie Clinic, Ltd.*, 22 N.Y.3d 480, 485 (N.Y. 2014) (stating that the Court of Appeals' "pronouncement is sufficient for the Court to conclude New York would permit plaintiffs to pursue a breach of confidence claim in this case.")).

Relying on *Doe v. Community Health Plan-Kaiser Corp.*, Judge Bricetti noted that the "cloak of confidentiality" extends to situations when, as here, a patient must provide his or her medical information to a medical corporation that provides treatment through its healthcare providers at its facilities. *Wallace,* 2021 WL 1109727, at *13 (noting that a health care corporation's duty "derives from the agency relationship present when a healthcare corporation provides or facilitates medical treatment through its agents"). Here, not only have Plaintiffs alleged a duty but they have also plausibly alleged that URMC breached that duty, *see* FAC, ¶¶ 255-260; "[w]hen a duty of confidentiality exists, New York courts recognize it may be breached through negligent failure to safeguard confidential information." *See, e.g.*, *Daly v. Metro. Life Ins. Co.*, 4 Misc.3d 887, 892 (Sup. Ct. N.Y. Cty. 2004) (finding victim of identity theft stated cause of action for breach of duty of confidentiality against insurance company for failing to safeguard confidential information). There is simply no support in New York law for URMC's argument that "[u]nder these circumstances, the Court should refuse to recognize a ***novel*** cause of action under New York common law based on the claimed disclosure of physician-patient confidences." (MTD at 12.) URMC's "best efforts" notwithstanding, Plaintiffs are ***not*** asking this Court to adopt or to recognize a novel cause of action; rather, they are asking this Court to reject URMC's rather transparent attempt to re-cast their breach of confidence claim as one for breach of physician-patient relationship and to find that they have adequately stated the elements of a claim for breach of confidence.

**D. Plaintiffs State a Claim for Breach of Contract.**

URMC contends that Plaintiffs have not adequately alleged their Breach of Contract claim because Plaintiffs supposedly do not allege a meeting of the minds with URMC as to any particular document. (*Compare* MTD at 5-7, *with* FAC, ¶¶ 223-231.) "Under New York law, a breach of contract claim [whether express or implied] requires (i) the existence of an agreement, (ii) adequate performance of the contract by the plaintiff, (iii) breach of contract by the defendant and (iv) damages." *Miller*, 2023 WL 2572937, at *18 (denying motion to dismiss breach of contract claim in analogous data breach class action because "the Privacy Policy did not just commit Defendant to putting in place sufficient procedures to prevent 'disclosure ....' [but] [t]he terms of the Privacy Policy sought to prevent 'unauthorized access' as well").

URMC contends that "rather than provide specifics, [P]laintiffs generally allege that [they] and Class Members entered into contracts with Defendant by which Defendant agreed to safeguard and to protect such information, *in its Privacy Policies and elsewhere*.'" (*Id.*, citing FAC, ¶ 225 (emphasis in original).) On the contrary, Plaintiffs point to numerous specific provisions of URMC's Privacy Policy and HIPAA Notice, which were provided to Plaintiffs and Class Members by URMC, that contain express promises. (*See, e.g.*, FAC, ¶¶ 113 & 114.)

URMC's Notice of Privacy Practices explains the University's legal duties with respect to PHI and the exceptions for when URMC can lawfully use and disclose PHI, ***none of which apply here***. (*Id.*, ¶ 115.) For instance, URMC acknowledges that it may only sell patients' PHI without their written authorization only in very limited circumstances, "such as if the covered entity is sold." (*Id.*, ¶ 116.) URMC also acknowledges that it is "required by law" to: (i) Make sure that medical information that identifies you is kept private; (ii) Give you this Notice of our legal duties and privacy practices with respect to medical information about you; and (iii) Follow the terms of

this Notice. (MTD, Dkt. 11-2, at 1 & FAC, ¶ 117 (stating that "[y]ou have the right to be notified of a breach of your unsecured protected health information, with a few limited exceptions").)

URMC breached those covenants when, for instance, it refused to notify Plaintiffs of a breach of their PHI – in other words, its unauthorized transfer to Facebook. In stark contrast to several covered entity healthcare entities (very similar to URMC) who have installed the Facebook Pixel and have provided their patients with notice of data breaches caused by the Pixel transmitting PHI to third parties, URMC has refused to notify its Users.[11] Simply put, URMC breached its obligations to keep patients' Private Information confidential and secure. (*See also* FAC, ¶¶ 119 & 122 (stating that Defendant violated its own privacy policies by unlawfully intercepting and disclosing Plaintiffs' and Class Members' Private Information to Facebook and third parties without adequately disclosing that URMC shared Private Information with third parties and without acquiring the specific patients' consent or authorization to share the Private Information); *Miller*, 2023 WL 2572937, at *18 (citing *Fero,* 236 F.Supp.3d at 761 (finding that plaintiffs "stated a breach of contract claim that is plausible on its face").

*i. URMC's HIPAA Notice Applies to PHI Collected, Used & Disclosed "Via the Ethers of the Internet"*

First, URMC contends—in rather facile fashion—that its "HIPAA privacy notice says nothing about the internet, whatsoever." (MTD at 6.) URMC then explains that its HIPAA Notice is a "notice to patients and potential patients, as required under federal law, describing how [it] can 'use and disclose' their protected health information, and what rights they have with respect to this information." (*Id.*) Plaintiffs' breach of contract claim (their entire case for that matter) centers on the allegation that URMC collected and disclosed Plaintiffs' PHI in violation of their rights.

---

11 *See, infra,* at n.4.

URMC's argument to avoid liability for breaching its Notice is non-sensical as the Notice does ***not*** apply physical or tangible information only, but rather it applies to ***all*** PHI regardless of whether it is transmitted "via the ethers of the Internet" or not. And the fact that the Notice is mandated by HIPAA has no impact on the viability of Plaintiffs' claims. *See, e.g., Anthem Inc. Data Breach Litig.,* No. 15-MD-02617-LHK, 2016 WL 3029783, at *12 (N.D. Cal. May 27, 2016) (explaining statements that "could be read to reflect a commitment by Anthem to implement privacy policies that complement or go beyond Anthem's preexisting legal duties" can form the basis of Plaintiff's breach of contract claim).

*ii. Plaintiffs Have Reciprocal Obligations.*

URMC contends that the "HIPAA notice contains no reciprocal obligations and therefore cannot form the basis for plaintiffs' contract claim." (MTD at 6.) On the contrary, Plaintiffs allege that as a condition of utilizing Defendant's digital platforms and receiving services from URMC, Plaintiffs and Class Members provided their Private Information. Moreover, the Privacy Policy and the HIPAA Notice are, upon information and belief, incorporated into and made expressly part of admissions and services contracts URMC has with its patients. Plaintiffs have asserted a plausible claim for breach of contract and should be permitted to conduct discovery on the interplay of the Privacy Policy, HIPAA Notice and admissions and/or other services contracts.

*iii. URMC's Exculpatory Clause Does Not Exonerate Its Unlawful Conduct.*

Desperate to avoid this lawsuit at any cost, URMC argues that there is absolutely no recourse for anyone harmed by using its website. (MTD at 7 (citing purported exculpatory language).) URMC ignores the fact that although a person may by contract avoid liability for his or her negligence, the same is not true for fraud or intentional misconduct. *See, e.g.*, *Imaging Int'l v. Hell Graphic Sys., Inc.*, 2006 N.Y. Slip Op. 30688, at *4-5 (N.Y. Sup. Ct. 2006) (citing cases).

URMC does not cite a single case upholding an exculpatory clause for intentional breach of contract or an intentional tort. Even if it could, exculpatory clauses are not favored, and courts will closely scrutinize them and strictly construe them against the party seeking to rely on them, especially when that party also drafted the waiver. *See, e.g., DeSousa v. March of Dimes Found.*, 2012 N.Y. Slip Op. 30395, at 3-4 (N.Y. Sup. Ct. 2012) (quoting *Abramowitz v. NYU Dental Ctr. Coll. of Dent,*, 494 N.Y.S.2d 721 (2d Dept. 1985) ("such agreements are always subjected to the closest of judicial scrutiny and will be strictly construed against their drawer") (citing cases). Also, an exculpatory clause will not be enforced where there is a substantial disparity of the parties' bargaining position, the social relationship between the parties militates against upholding the clause, or enforcement of the exculpatory clause would violate public policy.[12]

All of these considerations are present here as URMC's breaches were intentional and it made numerous false or misleading promises to the contrary. Moreover, there is a substantial disparity between the parties' respective bargaining positions as Plaintiffs' access to the Website and/or to the Portal is contingent upon acceptance of a contract of adhesion that was drafted by URMC and not subject to any negotiation. The social relationship between the parties militates against upholding the clause because URMC is the patients' healthcare provider, and that relationship carries duties that go beyond traditional arms-length contract negotiation. And finally, enforcement of the exculpatory clause would violate public policy by permitting healthcare

---

[12] Not to mention the fact that the Pixel collected certain information, like IP addresses, as soon as Users navigated to the Website or the Portal and therefore they could not have consented to the exculpatory clause. *See, e.g.*, *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *5 (9th Cir. May 31, 2022) (reversing dismissal of wiretap claim & finding that since tracking happened as soon as plaintiff navigated to website "Plaintiff has sufficiently alleged that he did not provide express prior consent to [defendant's] wiretapping of his communications").

providers to shirk and to avoid important data security and privacy promises via contracts of adhesion that providers force upon patients merely seeking access to their own medical records. URMC's attempt to avoid liability for knowing breach of contract should be rejected.[13]

### E. Plaintiffs Plausibly Allege the Elements of Their Unjust Enrichment Claim, Including Actual Detriment.

URMC argues that Plaintiffs' unjust enrichment claim "should be dismissed for failure to allege an actual detriment to the plaintiff[s]." (MTD at 8.) Plaintiffs have plausibly alleged that URMC was unjustly enriched by receiving, disclosing and otherwise misusing Plaintiffs' sensitive and confidential Private Information for its own gain without their authorization or compensation such that they are entitled to restitution. (*Compare* FAC, ¶¶ 240-246, *with, e.g.*, *Miller*, 2023 WL 2572937 (citation omitted) (stating that "[t]he essence of such a claim is that one party has received money or a benefit at the expense of another")); *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *28 (denying motion to dismiss unjust enrichment claim).

Plaintiffs have unquestionably alleged detriment, *i.e.*, that they conferred a benefit upon URMC which was unjustly retained in violation of fundamental principles of equity. Here, Plaintiffs allege that URMC—despite explicitly promising (numerous times and ways) to protect any and all PHI provided to it—made the conscious and intentional decision to utilize tracking technologies to collect, to use and to distribute that PHI to third parties such as Facebook—which has an extraordinarily sordid history of failing to protect confidential information entrusted to it. Then, to top that off, URMC did not pay Plaintiffs and Class Members for this data, which is undeniably valuable, as evidenced by Facebook's and other companies' efforts to collect such data

---

[13] Even if the exculpatory clause could be read to somehow bar Plaintiffs' claim for breaches of the Privacy Policy, URMC has *not* identified any putative exculpatory clause that would apply to its breaches of its HIPAA Notice; for instance, URMC's obligation to provide notice of a data security incident. (*See* MTD, Ex. A.)

in order to monetize it. *See, e.g.*, *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743 (N.D. Cal. 2022) (finding that lost personal information has value and citing data breach cases supporting growing trend for courts to recognize lost property value of personal information).

Moreover, URMC failed to provide Plaintiff with the full value of its medical services for which Plaintiff paid, which included the duty to maintain the confidentiality of their PHI. *See, e.g.*, *Wallace*, 2021 WL 1109727, at *11 ("Plaintiffs plausibly allege a claim for unjust enrichment[ as t]hey claim they were patients of defendant's healthcare provider network, paid defendant for its services, and were denied those benefits when defendant failed to abide by its obligations to safeguard plaintiffs' Private Information. These allegations plead the 'essence' of a claim for unjust enrichment."*).* And finally, URMC's conduct has exposed Plaintiffs' personal, private healthcare information—that Plaintiff intended to keep private—which has caused Plaintiffs embarrassment, humiliation, emotional harm and distress. *See In re Anthem, Inc. Data Breach Litig*., 2016 WL 3029783, at *15 ("Plaintiffs are not required to plead that there was a market for their PII and that they somehow intended to sell their own PII").

URMC makes blatant misrepresentations when it, citing *Mount v. PulsePoint*, states that "[t]he Southern District of New York made the same holding in this precise context: '[w]hile we recognize that browsing information may possess value in the abstract, absent allegations suggesting that plaintiffs' ability to monetize their browsing information was diminished, this alleged harm remains too conjectural." (MTD at 8 (citing 2016 WL 5080131, at *6 (S.D.N.Y. Aug. 17, 2016).) The facts of that case (*Mount*) are far from the "precise" situation presented in this case as that case involved anonymized web browsing data and *not* PHI and IIHI. *Mount, No.* 13 Civ. 6592 (NRB), 2016 WL 5080131, at **5-6. It is particularly galling that URMC resorts to blatant falsehoods and attempts to minimize the significance of the confidential PHI collected and

disclosed to third parties without patient knowledge or consent. To be clear, URMC configured the Pixel to disclose ***much more*** than "browsing information," and *Mount* is therefore inapposite.

## II. PLAINTIFFS HAVE ADEQUATELY ALLEGED THEIR G.B.L. § 349 CLAIM.

To state a claim under New York General Business Law § 349, Plaintiffs must allege that URMC engaged in (i) consumer-oriented conduct that is (ii) materially misleading and that (iii) plaintiffs suffered injury as a result of the allegedly deceptive act or practice. *See, e.g.*, *Miller*, 2023 WL 2572937, at *20; *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Conduct is "materially misleading" under the GBL if it consists of "representations or omissions . . . likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995). Deceptive practices "need not reach the level of common-law fraud," *Stutman v. Chem. Bank*, 731 N.E.2d 608, 608 (N.Y. 2000), and "[o]missions are actionable under § 349," *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 561 (S.D.N.Y. 2016).

URMC does not dispute that it engaged in consumer-oriented conduct but—rather remarkably—claims that Plaintiffs do not allege "a material deception by URMC" nor "how they were allegedly injured by reason of this claimed deception." (MTD at 14.) URMC contends that it makes extensive disclosures in its privacy policies. (*Id.*)[14] While URMC says that Plaintiffs "take[] issue with these disclosures at the margins, including in particular the claimed failure to specifically mention Facebook," that statement is false and misleadingly suggests that URMC has

[14] URMC seems particularly proud of the disclosure that "[t]he website uses Web analytics software to track visitor activity and to better understand how the website can be improved." (*Id.*, citing Ex B.) However, this case is not about the use of Web analytics software which (generally speaking) looks at anonymized data but rather the intentional and deliberate use of the Pixel to collect specific PHI and to disclose that PHI in violation of specific representations in its Privacy Policy and HIPAA Notice.

actually disclosed to its Website and Portal Users that it will collect and share their confidential PHI—in direct violation of HIPAA—in order to perform analytics, send targeted advertisements and to increase revenue and, ultimately, profits. To be clear, URMC has ***not*** identified such a disclosure because that disclosure because it does not exist.

Because it does not fit its narrative or arguments, URMC simply ignores the well-pleaded allegations of the Complaint, including specific allegations that Plaintiffs allege are false and misleading. (*See* FAC, ¶¶ 112-123.) The cited statements are alleged to be false and misleading, and these allegations are sufficient to state a GBL § 349 claim. *See, e.g.*, *Wallace*, 2021 WL 1109727, at *15 ("Plaintiffs plausibly allege defendant failed to fulfill these expectations both by failing to promptly notify them of any data breach, and by failing to implement safeguards to protect their Private Information."); *Miller*, 2023 WL 2572937, at *20 (denying motion to dismiss G.B.L. § 349 claim in data breach class action because "the movant[,] bears the burden of pro[ving no cognizable claim has been stated] on a motion to dismiss"); *Fero v. Excellus Health Plan, Inc.*, 236 F.Sup.3d 735, 776-77 (W.D.N.Y. 2017) (finding allegations defendant would "maintain adequate data privacy and security practices" and "comply with requirements of relevant federal and state laws" plausibly alleged material misrepresentation).

URMC's second argument in support of dismissal—that Plaintiffs have supposedly not pled sufficient injury—fares no better. *See, e.g.*, *Wallace v. Health Quest Sys.*, 2021 WL 1109727, at *6 (denying dismissal of GBL claim and finding "plaintiffs plausibly pled they suffered damages cognizable under their claims sounding in contract, and also under New York's consumer protection laws"); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d at 992-93 (collecting cases on GBL § 349 and finding allegations of lost benefit of the bargain sufficient to allege damages). Plaintiffs here make similar damages allegations, and the motion should be denied.

## III. PLAINTIFFS PLEAD A PLAUSIBLE CLAIM AGAINST URMC UNDER THE "CRIMINAL OR TORTIOUS" EXCEPTION TO THE ELECTRONIC COMMUNICATIONS PRIVACY ACT (ECPA).

URMC challenges the viability of Plaintiffs' claim under the ECPA, § 2511(1) (Count IX), by asserting that "it is not unlawful for a party to intercept its own communications, unless the party was doing so for the specific purpose of committing a crime or a tort." (MTD at 17.) The FAC, however, viably pleads a Wiretap Act claim through clear and specific allegations that URMC installed a Pixel on its Website and Portal to intercept and to disclose to third parties the contents of electronic communications containing PHI and IIHI. (*See* FAC, ¶¶ 289-307.) URMC's knowing disclosure to Facebook of PHI and IIHI is—as expressly provided by the statute—a crime under 42 U.S.C. § 1320(d)(6); therefore, URMC is liable for unlawful interception under the ECPA's "criminal or tortious" exception. *See, e.g., In re Meta Pixel Healthcare Litig.*, - F.Supp.3d - , 2022 WL 17869218, at 20 (N.D. Cal., Dec 22, 2022) (in an analogous action against Facebook for collecting patients' Private Information without consent via the Facebook Pixel Judge Orrick stated, in the context of denying plaintiffs' motion for a preliminary injunction, that there is a not-insignificant chance that plaintiffs may be able to show that the crime-tort exception applies); *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) (Google's interception of plaintiffs' private browsing data for the purpose of associating their data with preexisting user profiles is a further use of plaintiffs' data that satisfies the "tortious" exception).[15]

---

[15] URMC's reliance on *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010), is misplaced as that case supports Plaintiffs' position. (*See* MTD at 17, quoting *Caro* ("[I]t is apparent from the context in which [Title XVIII] was enacted that the sort of conduct contemplated by the statute was an interception by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed." (*Id.* (citation omitted).) URMC—at the time it installed the Pixel and the time it recorded the communications containing PHI and IIHI—intended to use those recordings by sending them to Facebook, a criminal or tortious act to which Plaintiffs did not consent.

URMC's intent can be proven by, among things, the fact that Facebook required healthcare entities using the Pixel to post conspicuous notices on any webpage embedded with the Pixel and URMC unquestionably did not so (because it wanted to collect and to monetize confidential information that Users likely would not provide if informed it would be shared with Facebook). Moreover, URMC at no point informed Users that their unsecured PHI and IIHI were sent to a third party with a sordid history of privacy violations without their consent, as URMC covenanted it would do via its HIPAA Notice. (*See* MTD, Ex. A.) Conduct like the kind perpetrated by URMC is exactly why the criminal or tortious exception exists. URMC can be prosecuted directly under the HIPAA (42 U.S.C. § 1320(d)(6)) for knowingly disclosing its patients' PHI and IIHI to Facebook by using the Pixel to intercept the contents of its patients' communications. Thus, although URMC is a party to the communication, it is still liable under the ECPA because it intercepted communications with the purpose of committing a criminal or tortious act. *See, e.g.*, *Caro*, 618 F.3d at 99-100 ("if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act").

URMC does not dispute that it disclosed its patients' PHI to Facebook for commercial marketing purposes without HIPAA consent. Nor could it, given that the Pixel it deployed on its website is designed to generate profits from commercial marketing. URMC's tacit admission is significant because it is a federal crime to "knowingly" disclose "individually identifiable health information" to third parties. *See* 42 U.S.C. § 1320(d)(6). Defendant does not violate HIPAA by *acquiring* the contents of the communications on its web properties; rather, URMC violates HIPAA when it uses the Pixel to *disclose* its Users' communications to Facebook, thereby divulging its patients' PHI and IIHI for its own commercial benefit. Thus, while the two events (interception and disclosure) occur simultaneously, URMC's conduct in disclosing its patients' PHI and IIHI is

independent from its conduct in intercepting that information and therefore falls squarely within the ECPA's criminal exception. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d at 144 n. 80; *Caro,* 618 F.3d at 97–98 (finding that a party to a communication can intercept the communication if it clandestinely records a conversation with the intention to commit a tort or other crime with the intercepted communication). Here, there is no question that URMC and Facebook intercepted substantive information during Plaintiffs' interactions with the Website and Portal.[16]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny URMC's Motion to Dismiss, grant leave to amend to address any pleading deficiencies noted by this Honorable Court and to award for all such other relief as equity and justice require.

Date: June 2, 2023

Respectfully submitted,

**WEITZ & LUXENBERG, PC**

/s/ James J. Bilsborrow

James J. Bilsborrow
(New York Bar No. 4702064)
700 Broadway
New York, NY 10003
(212) 558-5500

**ALMEIDA LAW GROUP LLC**

/s/ David S. Almeida

16 Plaintiffs withdraw their remaining federal claims, Count X, violation of § 2511(3)(a) of the Federal Wiretap Act, Count XI, violation of § 2702 of the Stored Communications Act and Count XII, violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* And, to the extent that this Court finds any claim to be lacking in any respect, Plaintiffs request leave to re-plead to address those concerns. *See* FED.R.CIV.P. 15(a)(2) (noting that courts are to freely provide leave to replead "when justice so requires"); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

David S. Almeida (*pro hac vice* pending)
(New York Bar No. 3056520)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com

*Counsel for Plaintiffs & the Class*