**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CAROL KANE and BONNIE WILSON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | Case No. 23-cv-6027 |
| v. | ) | The Honorable Frank P. Geraci |
| UNIVERSITY OF ROCHESTER, | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF DEFENDANT UNIVERSITY OF ROCHESTER'S RULE 12(B)(6) MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION........................................................................................................................1**

*A. This Case Is About an Alleged Breach of Physician-Patient Confidentiality.................1*

*B. Plaintiffs Have Not Stated a Breach of Confidence Claim under MacDonald..............3*

*C. Plaintiffs Have Not Adequately Alleged Breach of Express Contract. ...........................5*

*D. Plaintiffs Have Not Adequately Alleged Deception or Actual Injury. ............................7*

*E. The Wiretap Act's Tortious or Criminal Conduct Exception Does Not Apply. ..............8*

**CONCLUSION ..........................................................................................................................10**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramowitz v. New York Univ. Dental Ctr.*,
110 A.D.2d 343 (2d Dept. App. Div. 1985) ....................6

*Astroworks, Inc. v. Astroexhibit, Inc.*,
257 F. Supp. 2d 609 (S.D.N.Y. 2003)....................2

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................10

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................9, 10

*Chanko v. Am. Broad. Cos. Inc.*,
27 N.Y.3d 46 (2016) ....................3

*Chrysler Corp. v. Brown*,
441 U.S. 281 (1979)....................4

*Cohen v. Casper Sleep Inc.*,
2018 WL 3392877 (S.D.N.Y. Jul. 12, 2018) ....................10

*Desnick v. Am. Broad. Cos., Inc.*,
44 F.3d 1345 (7th Cir. 1995) ....................9

*DeSousa v. March of Dimes Found.*,
2012 WL 638099, 2012 N.Y. Slip Op. 30395(U) (Sup. Ct. New York Cty. Feb. 3, 2012) ....................6

*Doe v. Community Health Plan-Kaiser Corp.*,
268 A.D.2d 183, 709 N.Y.S.2d 215 (3d Dep’t 2000) ....................3

*Doe v. Guthrie Clinic, Ltd.*,
519 F. App’x 718 (2d Cir. 2013) ....................1

*Doe v. Guthrie Clinic, Ltd.*,
22 N.Y.3d 480 (2014) ....................3

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................9

*Fedell v. Weirzbieniec*,
127 Misc.2d 124, 485 N.Y.S.2d 460 (Sup. Ct. Erie Cty. 1985) ....................2

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ....................5, 8

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013) ....................7

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ....................9

*In re Hearst Comm'ns*,
--- F. Supp. 3d ----, 2022 WL 17770152 (S.D.N.Y. Dec. 19, 2022) ....................4

*Imaging Int'l v. Hell Graphic Sys., Inc.*,
2006 WL 7125699, 2006 N.Y. Slip. Op. 30688(U) (Sup. Ct. New York Cty. Sept. 7, 2006) ....................6

*Lim v. Radish Media, Inc.*,
2023 WL 2440160 (2d Cir. Mar. 10, 2023) ....................5

*MacDonald v. Clinger*,
84 A.D.2d 482, 446 N.Y.S.2d 801 (4th Dep't 1982) ....................1, 3, 4

*Meadows v. United Servs., Inc.*,
963 F.3d 240 (2d Cir. 2020) ....................4

*In re Meta Pixel Healthcare Litig.*,
--- F. Supp. 3d ----, 2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) ....................10

*Miller v. Syracuse University*,
--- F. Supp. 3d ----, 2023 WL 2572937 (N.D.N.Y. Mar. 20, 2023) ....................2, 5, 6

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2006) ....................8

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) ....................8

*Payne v. Taslimi*,
998 F.3d 648 (4th Cir. 2021) ....................4

*Sackin v. TransPerfect Global, Inc.*,
278 F. Supp. 3d 739 (S.D.N.Y. 2017) ....................2

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) ....................4

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) ....................4

*Sussman v. Am. Broad. Cos.*,
186 F.3d 1200 (9th Cir. 1999) ....................................................................................9

*Thompson v. Kline*,
504 F. Supp. 3d 200 (W.D.N.Y. 2020) ...........................................................................5

*Wallace v. Health Quest Systems, Inc.*,
2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) ...........................................................2, 3

*Young v. U.S. Dep't of Justice*,
882 F.2d 633 (2d Cir. 1989)..........................................................................................4

## INTRODUCTION

Plaintiffs have now withdrawn four of their twelve pleaded claims through their opposition brief. (*See* Dkt. 14, at 7 n. 7 (Count I); *id.* at 25 n. 16 (Counts X-XII).) The Court should dismiss plaintiffs' remaining eight claims for this simple reason: rhetoric aside, and one-by-one, they do not state a claim for which relief can be granted under Rule 12(b)(6).

URMC respectfully submits the following reply brief in support its motion to dismiss:

### A. This Case Is About an Alleged Breach of Physician-Patient Confidentiality.

Plaintiffs claim that "URMC manufactures a novel argument that Plaintiffs' common law claims for breach of implied contract, breach of fiduciary duty, and bailment are somehow preempted or precluded by their separate claim for breach of confidence." (Dkt. 14, Opp. 5.)

This argument is not "manufactured" or "novel" (*id.*, at 8); it follows from the case law. Indeed, in the *Doe v. Guthrie Clinic, Ltd.* case, elsewhere discussed in plaintiffs' opposition brief (*id.* at 14), the Second Circuit made this same holding with respect to an implied contract claim. *See Doe v. Guthrie Clinic, Ltd.*, 519 F. App'x 718, 719-20 (2d Cir. 2013). Citing to *MacDonald v. Clinger*, 84 A.D.2d 482, 446 N.Y.S.2d 801, 804-05 (4th Dep't 1982), the court held: "Because Doe's breach of contract claim is more properly cast as a claim in tort rather than contract, the District Court correctly dismissed it." *Id.*

Plaintiffs argue this subsumption rule does not apply because they "do *not* assert a claim for 'breach of physician-patient confidentiality[.]'" (Opp. Br. 8). The entire mooring of plaintiffs' amended complaint is for an alleged breach of physician-patient confidentiality, however. As they put it most basically: "A medical provider's duty of confidentiality is embedded in the physician-patient and hospital-patient relationship, it is a cardinal rule." (*See* Ex. A, Dkt. 8, Am. Compl. ¶ 128; *see also id.*, ¶¶ 1-6, 19, 22, 27-28, 48, 53, 89-95, 111, 129-132, 141-143, 158-160, 171-173, 233, 248, 252, 254-256, 259-260 (incorporated by reference physician-patient allegations).)

Plaintiffs dismiss *Fedell v. Weirzbieniec*, 127 Misc.2d 124, 125, 485 N.Y.S.2d 460 (Sup. Ct. Erie Cty. 1985), as a "slip and fall" case. (Dkt. 14, Opp. Br. 8-9.) There were two *Fedell* cases, however. In the second suit, Fedell sued her doctor for allegedly disclosing confidences to the defendant's counsel in the initial slip and fall case. *See* 127 Misc.2d at 125. It was here the court held: "The above-cited cases establish a separate tort action for breach of confidence. The case law also makes it clear that other causes of action are inappropriate." *Id.* at 126.

Plaintiffs cite *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609 (S.D.N.Y. 2003), to argue they are "certainly permitted to plead alternative claims or theories of liability based on the same or similar factual allegations." (Opp. 8.) *Astroworks*, however, addressed pleading breach of contract and unjust enrichment claims in the alternative, *id.* at 621, not the subsumption of physician-patient breach of confidence claims into a single tort under New York law.

Finally, plaintiffs cite *Wallace v. Health Quest Systems, Inc.*, 2021 WL 1109727, at *15 (S.D.N.Y. Mar. 23, 2021), and *Miller v. Syracuse University*, --- F. Supp. 3d ----, 2023 WL 2572937, at *22 (N.D.N.Y. Mar. 20, 2023), for the proposition that "alternative common law theories" were found to be viable in "analogous data breach class action[s]." (Opp. 9.) Both cases involved alleged third-party hackings, however, not alleged affirmative disclosures made by the defendant. *See Wallace*, 2021 WL 1109727, at *1; *Miller*, 2023 WL 2572937, at *1.

The defendants thus did not raise, and the court did not address, the subsumption argument; indeed, the *Miller* case did not involve a physician-patient relationship. *See* 2023 WL 2572937, at *1 ("According to the Complaint, 'Plaintiff is a student at Defendant Syracuse University.'") (quoting Compl. ¶ 2); *cf. Sackin v. TransPerfect Global, Inc.*, 278 F. Supp. 3d 739, 751 (S.D.N.Y. 2017) (denying motion to dismiss implied contract claim based on mandatory receipt of social security numbers in connection with employment relationship).

**B. Plaintiffs Have Not Stated a Breach of Confidence Claim under *MacDonald*.**

As for the merits, plaintiffs again accuse URMC of attempting to "manufacture" an argument, "albeit one that is contrary to New York law," that "only actual physicians (and not a healthcare entity) may be liable for breaches of confidences." (Dkt. 14, Opp. Br. 12; *id.* at 14.)

That is not what URMC has argued, however. The issue is not whether a healthcare provider can be held liable under New York law for a breach of patient confidences; URMC does not dispute that they can. (*See* Dkt. 11-1, Mem. in Supp. 11 (citing *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 55 (2016)).) The issue is the information at stake through plaintiffs' allegations. Again, this is a screenshot of the alleged medical information at issue by their complaint:

100. At each stage, Defendant also utilized the _fbp cookie, which attaches to a browser as a first-party cookie, and which Facebook uses to identify a browser and a user:[37]

| Name | Value | Domain |
|---|---|---|
| _fbp | fb.1.1671026827387.127455195 | .rochester.edu |

(Dkt. 8, Am. Compl. ¶ 100.)

Plaintiffs claim they are "***not*** asking this Court to adopt or to recognize a novel cause of action." (Dkt. 14, Opp. Br. 14 (emphasis in original).) Yet, they do not cite one case ever recognizing a privacy claim under New York state law based on the alleged transference of Internet cookies or Internet protocol addresses, whether by an actual physician or by the healthcare provider with whom he or she is employed. *Compare Wallace*, 2021 WL 1109727, at *1-2 (information included "the names of their healthcare providers," "dates of treatment," "diagnosis information," and "health insurance claims information"); *Doe v. Community Health Plan-Kaiser Corp.*, 268 A.D.2d 183, 184-85, 709 N.Y.S.2d 215 (3d Dep't 2000), *rejected by Doe v. Guthrie Clinic, Ltd.*, 22 N.Y.3d 480, 484-85 (2014) ("the alleged disclosure of medical information contained in her patient file by defendant Christian Adey, a medical records clerk employed by CHP").

Plaintiffs repeatedly argue that URMC violated HIPAA. (Dkt. 14, Opp. Br. 1, 4-6, 23-25.) To support this claim plaintiffs primarily cite a regulatory guidance that was first issued by the Department of Health and Human Services late last year. *Id.* at 4.) The guidance does not have the force and effect of law nor operate retroactively under basic rules of administrative procedure: "General statements of policy are 'statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n. 31 (1979) (quotation omitted). The guidance is also inconsistent with prior federal court precedent on this same point. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954 (N.D. Cal. 2017) ("Plaintiffs' argument fails because Facebook did not collect 'protected health information.'"), *aff'd* 745 F. App'x 8, 9 (9th Cir. 2018).

More to the point: How does it matter to plaintiffs' claims under *MacDonald* whether or not URMC allegedly violated HIPAA? The Second Circuit, like every other federal circuit court to address the question, has held the statute does not provide for a private right of action, whether express or implied. *Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020) ("Congress did not intend for HIPAA to create a private remedy."); *Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir. 2021) (same; collecting cases).

Plaintiffs are thus trying to imply a private right of action for HIPAA under New York law without any state law support. The Court should reject the invitation. As the Second Circuit has held: "We perceive that New York's courts have been rather conservative in recognizing causes of action for damages in the privacy field." *Young v. U.S. Dep't of Justice*, 882 F.2d 633, 640 (2d Cir. 1989); *compare In re Hearst Comm'ns*, --- F. Supp. 3d ----, 2022 WL 17770152, at *8 (S.D.N.Y. Dec. 19, 2022) (refusing to recognize privacy claim; "a federal court's role sitting in diversity is not to adopt innovative theories that may distort established state law").

### C. Plaintiffs Have Not Adequately Alleged Breach of Express Contract.

Plaintiffs argue they "point to numerous specific provisions of URMC's Privacy Policy and HIPAA Notice, which were provided to Plaintiffs and Class Members by URMC, that contain express promises." (Dkt. 14, Opp. Br. 15.) Plaintiffs cite paragraphs 113 and 114 of the amended complaint to support this statement. (*Id.*) Both of these allegations, however, only make allegations with respect to URMC's website privacy policy, not the HIPAA privacy notice.

That is the issue on plaintiffs' breach of contract claim: they simply have not placed URMC or the Court on notice as to what their theory for a breach of express contract claim is. *See, e.g.*, *Lim v. Radish Media, Inc.*, 2023 WL 2440160, at *2 (2d Cir. Mar. 10, 2023) (affirming dismissal of breach of contract claim where "[p]laintiff fails to sufficiently plead the existence of a contract because he does not provide factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms") (collecting cases holding same).

Indeed, plaintiffs attempt to raise a new contract theory through their opposition brief, that is nowhere alleged in their amended complaint: "Moreover, the Privacy Policy and the HIPAA Notice are, upon information and belief, incorporated into and made expressly part of admissions and services contracts URMC has with its patients." (Dkt. 14, Opp. Br. 17.) *But cf. Thompson v. Kline*, 504 F. Supp. 3d 200, 212 (W.D.N.Y. 2020) (rejecting plaintiff's argument contained in opposition papers as "an invalid attempt to use motion briefing to amend the complaint").

Plaintiffs cite *Miller*, 2023 WL 2572937, at *18, and *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 761 (W.D.N.Y. 2017). Those cases both analyzed specific contract theories, however; the issue was the definiteness of the terms. *See Fero*, 236 F. Supp. 3d at 760 (plaintiffs alleged privacy policy was incorporated by reference into insurance contracts; court rejected Excellus's argument that language stating "[w]e have a security coordinator to detect and prevent security breaches" and "[a]ll computer systems that contain personal information have security

protections" was not definite enough to state a contract claim); *Miller*, 2023 WL 2572937, at *17-18 (privacy policy incorporated by reference into admissions contracts; policy stated: "In order to prevent unauthorized access or disclosure, we have put in place suitable physical, electronic, and managerial procedures to safeguard and secure the information we collect online").

Finally, plaintiffs argue the exculpatory provisions in the website privacy statement are unenforceable as a matter of law. (Dkt. 14, Opp. Br. 1-2, 17-19.) As plaintiffs put it: "Desperate to avoid this lawsuit at any cost, URMC argues that there is absolutely no recourse for anyone harmed by using its website." (*Id.* at 17.)

This is not what URMC has argued. URMC has not relied on the limitation of liability provision contained in the website privacy statement to move for dismissal of any other of plaintiffs' claims. Rather, what URMC has argued that when plaintiff is suing to enforce alleged promises contained within the website privacy statement itself, then plaintiffs must take the bad with the good for this particular contract claim.

Plaintiffs do not cite one case casting any doubt on this common-sense proposition. *See Imaging Int'l v. Hell Graphic Sys., Inc.*, 2006 WL 7125699, at *2, 2006 N.Y. Slip. Op. 30688(U) (Sup. Ct. New York Cty. Sept. 7, 2006) (refusing to allow reliance on exculpatory provision where plaintiff claimed defendant fraudulently induced the contract in the first instance); *DeSousa v. March of Dimes Found.*, 2012 WL 638099, at *1, 2012 N.Y. Slip Op. 30395(U) (Sup. Ct. New York Cty. Feb. 3, 2012) (holding unsigned release did not bar personal injury claims arising out of motorcycle accident); *Abramowitz v. New York Univ. Dental Ctr.*, 110 A.D.2d 343, 344 (2d Dept. App. Div. 1985) (holding ambiguous release did not bar personal injury claims against dentist; plaintiff signed release "in the midst of the examination, while still in a reclining position, and with the customarily blinding dental examination light shining in his eyes").

### D. Plaintiffs Have Not Adequately Alleged Deception or Actual Injury.

Plaintiffs do not contest that G.B.L. § 349 does not apply to their unfair acts or practices allegations. (Dkt. 14, Opp. Br. 21-23.) With respect to deceptive practices, plaintiffs argue that "URMC simply ignores the well-pleaded allegations of the Complaint, including specific allegations that the plaintiffs allege are false and misleading." (*Id.* at 22.)

Here again, plaintiffs cite paragraphs 112 through 123 of the amended complaint to support this assertion. (*Id.*) In the main, however, these allegations dispute URMC's definition of protected health information in the privacy policy in the first instance, rather than identify any statement that is false separate and apart from this definition. (*See* Dkt. 11-3, Website Privacy Statement, at pg. 4/11 ("Anyone can visit and browse our entire website at any time without providing any protected health information.").) As stated above, the lone federal courts to address the issue had previously held that this type of alleged internet metadata was not protected health information.

More important are the facts that are missing from these allegations. Plaintiffs allege that URMC engaged in deceptive practices, but in doing so selectively quote from URMC's privacy statement, particularly with respect to the website privacy statement. (Dkt. 11-1, Mem. in Supp. 14-15; *id.* at Ex. B, pgs. 6/11-9/11.) Thus also, plaintiffs do not allege what is deceptive about URMC's alleged disclosures in the entire context in which they were made. This is insufficient to state a claim for deceptive practices under New York law. *See Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (holding that "[a] plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss").

In any event, even assuming that URMC's disclosures were in any way deceptive, plaintiffs have not alleged how they could have been injured by this alleged deception. This same argument also applies to their unjust enrichment claim. On either count, plaintiffs do not allege the following

facts: that they reviewed the website privacy statement; that they ever paid or were required to pay for using URMC's website, which is free both to search and use; or that they have lost any ability to sell their personal internet metadata in any way. Moreover, by using the internet in the first instance, plaintiffs are guaranteeing that their alleged private information is going to be disclosed to some third-party, regardless of what URMC says on this point. (Dkt. 11-1, Mem. in Supp. 2.)

Thus, while plaintiffs accuse URMC of making "blatant misrepresentations" and "blatant falsehoods" in its discussion of the *Mount v. PulsePoint* cases (Dkt. 14, Opp. Br. 20-21), the court's decisions in those cases speak for themselves. As the Southern District held: "While we recognize that browsing information may have possess value in the abstract, absent allegations suggesting that plaintiffs' ability to monetize their browsing information was diminished, this harm remains too conjectural." *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *5-6 (S.D.N.Y. Aug. 17, 2006) ("**Non-Actionable Theories of Injury**"), *aff'd* 684 F. App'x 32, 36 (2d Cir. 2017) (same).

As the *Fero* court likewise held: "Although Plaintiffs' [Consolidated Master Complaint] alleges that the information compromised in the Excellus data breach commands a high price on the black market, the CMC lacks factual allegations to support the proposition that their personal information was made less valuable to them as a result of the breach, or that the data breach negatively impacted the value of their data such that Plaintiffs could not use or sell it." 236 F. Supp. 3d at 755, *reconsidered on other grounds*, 304 F. Supp. 3d 333, 345 (W.D.N.Y. 2018).

### E. The Wiretap Act's Tortious or Criminal Conduct Exception Does Not Apply.

As set forth above, plaintiffs' amended complaint initially stated four federal statutory claims. (Dkt. 8, Am. Compl. ¶¶ 289-345.) Plaintiffs are now down to one: for alleged violation of the Wiretap Act. On each of their withdrawn claims, plaintiffs' amended complaint failed to meet a basic requirement for pleading the statutory count. (Dkt. 11-1, Mem. in Supp. 19-25.) On this claim too, plaintiffs miscomprehend the purpose of the tortious and criminal conduct exception.

Specifically, plaintiffs argue it is enough that they are seeking to hold URMC liable for the disclosure of plaintiffs' information, and that this disclosure allegedly violated the law. (Dkt. 14, Opp. Br. 24-25.) As plaintiffs explain: "URMC can be prosecuted directly under the HIPAA (42 U.S.C. § 1320(d)(6)) for knowingly disclosing its patients' PHI and IIHI to Facebook by using the Pixel to intercept the content of its patients' communications." (*Id.* at 24.)

Plaintiffs do not allege or cite to one prosecution for the alleged use of website analytics under this statute. Either way, the Second Circuit's opinion in *Caro* (*id.* at 23 n. 15), shows that plaintiffs' argument is not correct on the exception itself. Whether or not URMC's conduct might have violated some other law does not determine the analysis. The analysis instead focuses on the intended purpose of URMC's alleged interception—was it undertaken for the purpose of harming the named plaintiff in particular, that is independent from the act of recording itself. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 & n.81 (3d Cir. 2015); *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010); *Sussman v. Am. Broad. Cos.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353-54 (7th Cir. 1995).

As the Second Circuit synopsized: "If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation." 618 F.3d at 100. "But if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act." *Id.*

Here, as in *Caro* and *Desnick,* plaintiffs have pleaded themselves out of court by alleging facts that show as a matter of law that the tortious or criminal conduct exception could not apply. *See also In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 518 (S.D.N.Y. 2001) (rejecting argument that exception could apply to alleged internet tracking; "The Amended Complaint does not articulate any facts that could support an inference that DoubleClick accessed plaintiffs'

electronic communications with the 'insidious' intent to harm plaintiffs or others."); *Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *3-4 (S.D.N.Y. Jul. 12, 2018) (same; "the exception is confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party").

Plaintiffs cite *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). That decision, however, is inconsistent with *Caro*: the court applied the exception to an intrusion upon seclusion claim. *Id.* Plaintiffs also cite *In re Meta Pixel Healthcare Litig.*, --- F. Supp. 3d ----, 2022 WL 17869218, at *9 (N.D. Cal. Dec. 22, 2022). Plaintiffs do not disclose the essential point that healthcare providers are no longer involved in that case, and thus also the court is only receiving a one-sided view of these questions of health privacy law. *See id.* at *9 ("Meta does not challenge plaintiffs' assertion that patient status is protected health information under HIPAA").

**CONCLUSION**

Plaintiffs insert a conclusory request for leave to amend at the back of their opposition brief. (Dkt. 14, Opp. Br. 25.) This request for leave is improper under Local Rule 15(a). In any event, for all the reasons set forth above, the Court should dismiss the amended complaint with prejudice because under the facts and claims at issue amendment would be futile.

Dated: June 16, 2023

Respectfully submitted,

/s/ David Carney
David A. Carney (OH 0079824)
Nathaniel O. Hanna (*pro hac to be filed)*
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Email: dcarney@bakerlaw.com
nhanna@bakerlaw.com

*Attorneys for Defendant University of Rochester Medical Center*

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on June 16, 2023, a true and correct copy of the foregoing Reply Brief in Support of URMC's Rule 12(b)(6) Motion to Dismiss was served on counsel of record via the Court's electronic filing system.

*/s/* David Carney
*Counsel for Defendants*