**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

CAROL KANE and BONNIE WILSON, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

THE UNIVERSITY OF ROCHESTER MEDICAL CENTER,

Defendant.

Case No. 6:23-CV-06027

The Hon. Mark W. Pedersen
United States Magistrate Judge

**NON-PARTY MINTCLAIM PARTNERS LP'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO ENJOIN**

## TABLE OF CONTENTS


TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 3

ARGUMENT ........ 7

I. MINTCLAIM'S OPT OUT WAS VALID ........ 7

A. Under the Terms of the Parties' Agreement, Mintclaim Was a "Settlement Class Member" Before it Opted Out ........ 7

1. The Settlement Agreement defines "Settlement Class Member" to include "assignees" ........ 8

2. For purposes of this Motion, URMC acknowledges that Mintclaim is an "assignee" ........ 10

B. Mintclaim Validly Opted Out Solely On Its Own Behalf ........ 11

C. URMC's Argument Conflicts with Settled Principles of Class Action Law and Administration. ........ 15

II. IF MINTCLAIM WERE NEVER A "SETTLEMENT CLASS MEMBER," THEN THIS COURT WOULD LACK JURISDICTION ........ 19

III. CONCLUSION ........ 21

# TABLE OF AUTHORITIES

## Cases

*Berger v. Heckler*, 771 F.2d 1556 (2d Cir. 1985) .......... 8

*Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402 (2d Cir. 1975) .......... 17

*Bluebird Partners, L.P. v. First Fid. Bank, N.A. N.J.*, 85 F.3d 970 (2d Cir. 1996).......

*DNAML Pty, Ltd. v. Apple Inc.*, No. 13CV6516 (DLC), 2015 WL 9077075 (S.D.N.Y. Dec. 16, 2015) .......... 11

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425 (3d Cir. 1993) .......... 11

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......... 17

*In re Centurylink Sales Pracs. & Sec. Litig.*, No. CV 17-2832, 2020 WL 3512807 (D. Minn. June 29, 2020) .......... 16

*In re Deepwater Horizon*, 819 F.3d 190 (5th Cir. 2016) .......... 16

*In re Dozier Fin., Inc.*, 587 B.R. 637 (Bankr. D.S.C. 2018) .......... 11

*In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081 (3d Cir. 1980) .......... 11

*In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 268 F.3d 627 (8th Cir. 2001) .......... 16

*In re Google Assistant Priv. Litig.*, No. 5:19-CV-04286-BLF, 2025 WL 510435 (N.D. Cal. Feb. 14, 2025) .......... 16,

*In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Secs. Litig.*, 636 F. Supp. 1138 (C.D. Cal. 1986) .......... 11

*In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486 (9th Cir. 1985) .......... 11

*In re Opana ER Antitrust Litig.*, 2016 WL 738596 (N.D. Ill. Feb. 25, 2016) .......... 11

*In re OSB Antitrust Litig.*, No. 06-826, 2009 WL 129737 (E.D. Pa. Jan. 14, 2009) ... 2, 12

*In re Preston Trucking Co.*, 392 B.R. 623 (D. Md. 2008) .......... 11

*In re TikTok, Inc*, 565 F. Supp. 3d 1076 (N.D. Ill. 2021) .......... 16

*In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904 (N.D. Ill. 2022) .......... 2,

*In re Turkey Antitrust Litig. ["Turkey II"]*, No. 19 C 8318, 2025 WL 1795136 (N.D. Ill. June 30, 2025)........................................................................ 3, 12, 18, 19

*John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394 (2d Cir. 2018) ........................ 15

*Knott v. McDonald's Corp.*, 147 F.3d 1065 (9th Cir. 1998) ....................................... 11

*Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106 (3d Cir. 1993) ............................................ 11

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009)........................................ 16

*Nat'l Sec. Couns. v. C.I.A.*, 960 F. Supp. 2d 101 (D.D.C. 2013) ................................ 11

*Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985) ..................................................... 3,

*Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195 (2d Cir. 2016)............................... 8, 20

*Schlosser v. Kwak*, 16 F.4th 1078 (2d Cir. 2021).........................................................

*Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)......................................................................... 17

*Sharp Farms v. Speaks*, 917 F.3d 276 (4th Cir. 2019) .............................................. 17

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269 (2008) ...................... 15

*Stark v. Patreon, Inc.*, 2025 WL 1592736 (N.D. Cal. June 5, 2025) ........................ , 14

*United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, No. 14-MD-02521-WHO, 2015 WL 4397396 (N.D. Cal. July 17, 2015)......................................................................... 12

*Wallach v. Eaton Corp.*, 837 F.3d 356 (3d Cir. 2016)............................................... 11,

## PRELIMINARY STATEMENT

The parties to this Action reached a settlement agreement under which all "individuals . . . *and their respective* . . . *assignees* . . . who fall[] within the definition of the Settlement Class" are defined as "Settlement Class Members." ECF No. 44 at 6 ¶ 1.17 (emphasis added), 8 ¶ 1.25. Mintclaim Partners LP is the assignee of 389 individuals who fall within the definition of the Settlement Class. *E.g.*, ECF No. 69-3 at 4 ¶ 3. That makes Mintclaim a Settlement Class Member. Under the Settlement Agreement, a Settlement Class Member may opt out of the Settlement Class by sending a timely written notice to the settlement administrator and may opt out "only on behalf of themselves." ECF No. 44 at 19 ¶ 5.2. Mintclaim did exactly this. ECF No. 69-5 at 1. So Mintclaim was a Settlement Class Member that validly excluded itself and, therefore, "shall not . . . be bound by the terms of the settlement agreement." *Id.* at 44 ¶ 5.2.

After Mintclaim opted out, it filed an action against Defendant the University of Rochester Medical Center (URMC) in New York Supreme Court asserting claims under the Wiretap Act. *See Mintclaim Partners, LP v. University of Rochester Medical Center*, Sup. Ct. Monroe County, Case No. E202501932 (filed Sept. 4, 2025), removed to this Court and now at Dkt. No. 6:25-cv-06558-MAV. But instead of defending the suit, URMC seeks to enjoin Mintclaim from prosecuting its case on the ground that the 389 individuals who assigned their claims to Mintclaim never opted out themselves and, therefore, Mintclaim is bound to their agreement.

This Court should deny the request because Mintclaim was a Settlement Class Member who validly opted out as the assignee of 389 claims, and so it is not bound

by the class judgment. URMC does not contest the validity of Mintclaim's assignment agreements and points to no source of law that would bind Mintclaim to the judgment despite Mintclaim's opt out. Instead, URMC simply omits the relevant language of the settlement agreement it signed, contending that Settlement Class Members are only the "individuals" who accessed URMC's patient portal and ignoring that the agreement specifically contemplates assignees like Mintclaim by defining "Person" to mean "individuals . . . *and their respective* . . . *assignees*."

Next, URMC argues that the opt-out Mintclaim submitted on its own behalf is a "mass" or "class" opt out prohibited by the settlement agreement. The contractual term on which URMC relies prohibits "mass or class opt-outs," but it permits Class Members to "opt-out on behalf of them*selves* only"; it thus bars one person from opting out on behalf of multiple people, not one person who holds multiple claims from opting out all of its claims via one sheet of paper. *Compare, e.g.*, *In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 931 (N.D. Ill. 2022) (approving opt outs where "[r]ather than individually submitting their opt-out forms, these movants retained counsel who combined the opt-out forms and submitted them *en masse*"). Tellingly, URMC does not contest that assignees of claims have the right to opt out of class actions on their own behalf, which they do, *In re OSB Antitrust Litig.*, No. 06-826, 2009 WL 129737, at *2 (E.D. Pa. Jan. 14, 2009) ("Because [the plaintiff assignee] seeks to proceed as an assignee . . . , it has standing to opt out of this litigation with respect to the claims it received from [a class-member assignor]."). And the law is clear that people who hold multiple claims in the same class action may opt out as to

many claims at the same time. *See id.* (speaking of "claims," plural). Accordingly, Mintclaim's opt out was valid, and under *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985), Mintclaim may not be bound by a judgment from which it opted out.

Because URMC's arguments fail under the text of its own agreement, URMC effectively argues for the creation of a novel rule of federal law under which the assignees of claims are barred from opting out of class-action settlements where they receive more than one claim by assignment. But that would work a radical change in policy that effectively forbids the assignment of *any* class-action claims, this Court is not the appropriate forum to direct those policy arguments, *In re Turkey Antitrust Litig. ["Turkey II"]*, No. 19 C 8318, 2025 WL 1795136, at *1 (N.D. Ill. June 30, 2025) ("Federal judges are not in the business of creating public policy for new developments in litigation that might be disfavored."), and regardless Mintclaim's business affirmatively forwards the policies that the Wiretap Act and federal class-action law exist to protect, *In re Turkey Antitrust Litig. ["Turkey I"]*, No. 19 C 8318, 2024 WL 1328824, at *4 (N.D. Ill. Mar. 28, 2024) (allowing assignment of class- and MDL-action claims to promote "enforcement" of Congress's laws).

Finally, in the alternative, if URMC were somehow right that Mintclaim was never a Settlement Class Member, then this Court should still deny URMC's motion: This Court would lack of jurisdiction to order the requested relief because this Action, by definition, governs only the rights of Settlement Class Members.

## BACKGROUND

Mintclaim Partners LP is a limited partnership formed under the laws of the District of Columbia and headquartered there. ECF No. 69-3 at 4 ¶ 5 (Monroe County

Complaint).[1] Mintclaim exists to help people get more value out of the class-action process. It does so by acquiring assignments of legal claims for a price equal to what class members would have received had they submitted their claims in the class action, and then pursuing those claims in court while sharing the upside with the assignors. *See, e.g.*, MINTCLAIM, *About Us*, mintclaim.com/about (last accessed Oct. 16, 2025).

On January 11, 2023, Plaintiffs Carol Kane and Bonnie Wilson filed this Action, alleging (among other things) that URMC violated their rights under the Wiretap Act. ECF No. 1. On March 19, 2024, this Court dismissed many of Plaintiffs' other claims but allowed the Wiretap Act claim to proceed, holding that Plaintiffs adequately alleged that URMC knowingly disclosed Plaintiffs' protected health information in violation of federal law, thus satisfying the crime–tort exception to the one-party-consent rule of the Wiretap Act. ECF No. 24.

On April 10, 2025, Plaintiffs and URMC sought preliminary approval of a revised settlement agreement, ECF No. 44, which the Court granted, ECF No. 45. The agreement released "any and all claims and causes of action . . . that either ha[ve] been or could have been asserted by any Settlement Class Member against [URMC and related parties] . . . based on . . . the Litigation." ECF No. 44 at 7 ¶ 1.20. But the "[r]eleased claims shall not include . . . the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class." *Id.* at 8 ¶ 1.20. "Settlement Class Members" are defined as "any Person who falls within the

[1] All page references are to the ECF pagination in blue for docket entries.

definition of the Settlement Class," *id.* ¶ 1.25, and "Person" is defined to include all "individuals . . . *and their respective* . . . *assignees* . . . ," *id.* at 6 ¶ 1.17 (emphasis added). The Settlement Class is defined as "all individuals who accessed or otherwise used URMC's MyChart patient portal . . . or filled out forms on URMC's public website" within a certain date range. *Id.* at 8 ¶ 1.25.

In July 2025, Mintclaim reached out via online advertising to individuals who may have been harmed by URMC's disclosure of their private information seeking to acquire assignments of their claims against URMC. Harrow Decl. ¶ 2. Mintclaim's communications ensured that all assignors were directed to the settlement website for information about the settlement to consider whether they wished to participate in it rather than assign their claims to Mintclaim. Harrow Decl. ¶ 2. Those who chose to assign their claims to Mintclaim were paid an amount at least equal to what they would have received *had they submitted a claim* under the settlement, not just the average payment to class members. Harrow Decl. ¶¶ 2, 5; *see also* ECF 56-1 at 4 (estimating payment of $33.81 to each claimant in this matter). Assignees are entitled to additional payments should Mintclaim recover in its state-court suit. Harrow Delc. ¶ 2. It is thus not disputed that Mintclaim's assignment agreement leaves the Assignors better off than they could have been under the settlement agreement and that Mintclaim's communications to them adequately informed them of their options in clear, non-misleading terms.[2]

[2] URMC obliquely points this Court to a decision in *Stark v. Patreon, Inc.*, 2025 WL 1592736 (N.D. Cal. June 5, 2025), in which a court invalidated assignments of

Mintclaim received assignments from 389 individuals who accessed MyChart or filled out forms on URMC's website during the relevant date range. Harrow Decl. ¶ 3. All of these individuals personally signed a document "authoriz[ing] Mintclaim Partners LP to request exclusion from the Class preliminarily certified on April 10, 2025, in *Kane v. University of Rochester*, No. 23-cv-06027-MJP (W.D.N.Y.), in connection with any and all claims that [they] assigned to Mintclaim Partners LP." Harrow Decl. ¶ 4. Mintclaim then submitted an opt out request that explicitly stated it was opting out "solely on its own behalf," and it contained a signature from its principal. ECF No. 69-5 at 1. The request included a list of the claims that Mintclaim owned by assignment, solely "for the convenience of the settlement administrator." *See* ECF No. 69-5. The settlement administrator apparently ignored Mintclaim's opt out form and did not request any further information, ECF No. 56-3 ¶ 22, but URMC does not contest in its motion that the opt out form was timely received.

On September 4, 2025, Mintclaim filed suit against URMC in Monroe County Supreme Court alleging violations of the Wiretap Act as assignee of 389 people whose personal health information URMC wrongly disclosed. *See* Complaint, Doc. No. 1, *Mintclaim v. University of Rochester Med. Cent.*, No. E2025019382 (N.Y. Sup. Ct.,

---

class-action claims to a different entity on the primary ground that the communications with assignees did not give the full details of the settlement agreement the parties had reached. That is different from here, where Mintclaim prominently and repeatedly directed assignees to the settlement website for further information *and* promised and paid assignees the same amount they would have received had they filed a claim. Accordingly, URMC in its Motion does not—because it cannot—contend that any of the representations Mintclaim made in *this* case were misleading or that the assignment agreements signed in *this* case were invalid.

Monroe County, Sept. 4, 2025) (filed in this Court at ECF No. 69-3). URMC timely removed the action to this Court. Dkt. No. 6:25-cv-06558-MAV. But instead of answering the suit or otherwise defending against the allegations, URMC has moved in this Action to "enjoin non-party Mintclaim Partners L.P. from prosecuting its pending lawsuit." ECF No. 69.[3]

## ARGUMENT

URMC seeks to enjoin Mintclaim on the contradictory grounds that it is (a) not a Settlement Class Member in this Action and yet (b) is somehow bound by the Settlement Agreement in this Action. Neither ground is correct. Mintclaim was a Settlement Class Member who validly opted out under the terms of the Settlement Agreement. And regardless, assignees of claims have a right to, and frequently do, opt out of class actions as to multiple claims at the same time. In the alternative, if Mintclaim was never a settlement class member, this Court should deny the motion for lack of jurisdiction.

### I. MINTCLAIM'S OPT OUT WAS VALID

#### A. Under the Terms of the Parties' Agreement, Mintclaim Was a "Settlement Class Member" Before it Opted Out

URMC's argument begins with a fatally flawed premise: that "Mintclaim Partners [was] not a member of the *Kane* settlement class" because that class consists

[3] Mintclaim hereby consents to the jurisdiction of a Magistrate Judge for all purposes related to this Motion but reserves its challenge, as explained at Section I.D., to the jurisdiction of this Court as a whole if Mintclaim is found never to have been a member of the Settlement Class in this Action. For the avoidance of doubt, Mintclaim does not consent to the jurisdiction of a Magistrate Judge in its now-removed action against URMC.

of only "'(i) all individuals who accessed or otherwise used URMC's MyChart patient portal between January 11, 2021 and January 11, 2023,'" and "'(ii) all individuals who filled out forms on URMC's public website between January 1, 2018, and June 12, 2023.'" ECF No. 69-1 at 9 (quoting ECF No. 44 ¶ 1.24 (emphasis added)). Remarkably, URMC neither includes a copy of the settlement agreement with its motion nor points the Court to all of the Agreement's relevant definitions. *Id.* The Settlement Agreement, read as a whole, expressly contemplates that claims may be assigned and specifically includes assignees like Mintclaim in its provisions. And because this Court incorporated the Settlement Agreement's definitions in its judgment, ECF No. 45, those definitions control. Mintclaim was a Settlement Class Member that validly opted out.

#### *1. The Settlement Agreement defines "Settlement Class Member" to include "assignees"*

Class-action settlement agreements are "hybrid[s] in the sense that they are at once both contracts and orders." *Berger v. Heckler*, 771 F.2d 1556, 1567–68 (2d Cir. 1985) (citation omitted). Although they are "enforced as orders," "they are construed largely as contracts." *Id.* And "[a]s contracts, we interpret them in accordance with general principles of contract law." *Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 205 (2d Cir. 2016) (quotation marks omitted)). "When interpreting a contract, the intention of the parties should control, and the best evidence of intent is the contract itself." *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) (alterations and internal quotation marks omitted).

The Settlement Agreement contains five paragraphs of cross-referencing

definitions together defining who may be enjoined by the Court from prosecuting an action based on the claims released by the agreement. First, Paragraph 7.5 explains that all "Settlement Class Members shall be enjoined from prosecuting . . . the Released Claims." ECF No. 44 at 22 ¶ 7.5. Second, Paragraph 1.20 excludes from the definition of "Released Claims" "the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class." *Id.* at 8 ¶ 1.20. Third, Paragraph 1.25 defines "Settlement Class Member" as a "*Person* who falls within the definition of the Settlement Class." *Id.* at 8 ¶ 1.25 (emphasis added). Fourth, "'Person' means . . . any . . . individual . . . and their respective . . . assignees." *Id.* at 6 ¶ 1.17. Fifth and finally, the "Settlement Class" is defined as "(i) all individuals who accessed or otherwise used URMC's MyChart patient portal between January 11, 2021 and January 11, 2023," and "(ii) all individuals who filled out forms on URMC's public website between January 1, 2018, and June 12, 2023." *Id.* at 8 ¶ 1.24.

Taken together, Settlement Class Members are defined as "all individuals . . . and their respective . . . assignees . . . who accessed or otherwise used URMC's MyChart patient portal . . . [or] filled out forms on URMC's public website [within the relevant date range]." URMC itself acknowledges in its motion that Mintclaim is "the purported 'assignee' of the claims of three hundred eighty-nine Kane settlement class members." ECF 69-1 at 1. By the plain text of the Agreement, then, Mintclaim is a Settlement Class Member who may validly be excluded from the settlement by opting out, which it did.

URMC's argument to the contrary ignores the Agreement's definition of

"Person," which explicitly includes assignees like Mintclaim. But settlement agreements must be read to give legal effect to all their terms, *Cont'l Ins. Co.*, 603 F.3d at 180. URMC makes no argument for why this Court should read URMC's definition of "Person" differently than URMC wrote it, and there is no argument for that outcome. The effect of Paragraph 1.17 is clear: The agreement explicitly contemplates that the claims subject to the agreement may be assigned and provides that when they are assigned the assignees become Settlement Class Members.

*2. For purposes of this Motion, URMC acknowledges that Mintclaim is an "assignee"*

URMC does not contest that the assignment agreements on which Mintclaim based its action in Supreme Court are valid and, for purposes of its Motion, URMC refers to Mintclaim as the "purported assignee" of the relevant claims. *E.g.*, ECF No. 69-1 at 1. As explained above, that acknowledgement means this Court must treat Mintclaim as a Settlement Class Member under the Agreement that URMC drafted, agreed to, and successfully urged this Court to approve.

In a footnote, however, URMC alludes to New York's champerty statute in an apparent attempt to cast some doubt on the validity of assigning the federal claims at issue. ECF No. 69-1 at 6 n.1. That allusion is not an argument sufficient to bring the issue before the Court, *e.g.*, *Schlosser v. Kwak*, 16 F.4th 1078, 1080 n.1 (2d Cir. 2021) (discussing requirements for properly raising arguments), but it is a red herring anyway because that state-law provision does not impact the assignments of federal claims here. Under binding Second Circuit precedent, and abundant out-of-circuit authority too, *federal* law governs the assignability of federal claims. *Bluebird*

*Partners, L.P. v. First Fid. Bank, N.A. N.J.*, 85 F.3d 970, 973 (2d Cir. 1996) (so holding); *see also Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 437 (3d Cir. 1993) (same, like all others in the following string); *Knott v. McDonald's Corp.*, 147 F.3d 1065, 1068 n.4 (9th Cir. 1998); *In re Fine Paper Litig. State of Wash.*, 632 F.2d 1081, 1090 (3d Cir. 1980); *DNAML Pty, Ltd. v. Apple Inc.*, No. 13CV6516 (DLC), 2015 WL 9077075, at *3 (S.D.N.Y. Dec. 16, 2015); *In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Secs. Litig.*, 636 F. Supp. 1138, 1152 (C.D. Cal. 1986); *In re Preston Trucking Co.*, 392 B.R. 623, 630 (D. Md. 2008); *In re Dozier Fin., Inc.*, 587 B.R. 637, 654 n.14 (Bankr. D.S.C. 2018); *In re Opana ER Antitrust Litig.*, 2016 WL 738596, at *5 (N.D. Ill. Feb. 25, 2016); *see also Wallach v. Eaton Corp.*, 837 F.3d 356, 366 (3d Cir. 2016); *Lerman v. Joyce Int'l, Inc.*, 10 F.3d 106, 112 (3d Cir. 1993) (Alito, J.); *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1489 (9th Cir. 1985); *Clover Cmtys. Beavercreek, LLC v. Mussachio Architects P.C.*, 2023 WL 3864965, at *8 (N.D.N.Y. June 7, 2023); *Nat'l Sec. Couns. v. C.I.A.*, 960 F. Supp. 2d 101, 142 (D.D.C. 2013). Accordingly, a New York state statute that may impact the validity of assignments of *state* claims simply has no application to this motion and the separate case filed by Mintclaim and removed to this Court, which deals only with a federal cause of action. This Court may thus ignore URMC's inapplicable aside. For purposes of this motion, the assignments at issue in this case are legally valid and URMC does not contend otherwise.

### B. Mintclaim Validly Opted Out Solely On Its Own Behalf

It is undisputed for purposes of URMC's motion that Mintclaim timely submitted an individually signed opt out form meeting the procedural requirements

for a valid opt out and that Mintclaim opted out of claims it holds "solely on its own behalf," as expressly stated on Mintclaim's request for exclusion. ECF 69-5 at 1. Prohibitions on "mass" or "group" opt-outs do not bar assignees from opting out when they hold multiple claims for the simple reason that assignees have the right to opt out of class actions on their own behalf. *See, e.g.*, *In re OSB Antitrust Litig.*, No. 06-826, 2009 WL 129737, at *2 (E.D. Pa. Jan. 14, 2009) ("Because [the plaintiff assignee] seeks to proceed as an assignee . . . , it has standing to opt out of this litigation with respect to the claims it received from [a class-member assignor]."). That rule applies where, as here, assignments are complete and irrevocable. *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, No. 14-MD-02521-WHO, 2015 WL 4397396, at *7 (N.D. Cal. July 17, 2015); *In re OSB*, 2009 WL 129737, at *2. And there is no question (and URMC does not argue) that assignees may receive more than one claim against the same defendant and prosecute all of their claims together. *E.g.*, *OSB*, 2009 WL 129737, at *2 (allowing one party to opt out of class action as to "certain *claims*," that is more than one claim, against the same defendants); *see also Turkey II*, 2025 WL 1795136, at *1 (allowing one party to bring many claims it received by assignment); *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) ("[A]lso there is no dispute that R&R's assignment of its antitrust *claims* to Tauro was both written and express, meaning that it is valid with or without consideration." (emphasis added)); *Turkey I*, 2024 WL 1328824, at *4 (same).

URMC nonetheless argues that Mintclaim may be enjoined from bringing its

suit because Mintclaim's opt out is invalidated by a term of the settlement agreement stating only that "'Settlement Class Members may opt out only on behalf of themselves; mass or class opt-outs will not be valid.'" ECF No. 69-1 at 11 (quoting ECF No. 44 at ¶ 5.1). URMC's argument fails because Mintclaim *did* "opt out only on behalf of themselves": its opt out covers only claims it owns. ECF No. 69-5 at 1. Mintclaim's submission was not a "mass or class" opt out that attempted to opt out multiple people or entities with only one submission.

As explained above, the Settlement Agreement is read as a contract, and its text controls. The text of the Settlement Agreement forbids one person from opting out any *other person* in a group but does not forbid class members from opting *themselves* out, whether they have multiple claims or a single one. Accordingly, Mintclaim agrees with URMC's statements that "the right to opt out in a Rule 23(b)(3) class action is considered an *individual* right" and that settlement agreements may validly require individual signatures to evidence the intent to invoke that right. ECF No. 69-1 at 11 (citation omitted) (emphasis in original). But that is what occurred here: Mintclaim *individually* opted out on behalf of *itself* for all and only claims it is entitled to prosecute under its own name against URMC.

URMC's argument that the opt out is invalid solely because *the assignors* did not individually sign the opt out forms ignores the reality that by the time Mintclaim signed the opt out forms, *Mintclaim* was a Settlement Class Member and had the conceded authority to opt out on its *own* behalf. URMC claims that Mintclaim "purport[ed] to opt out 389 putative settlement class members *en masse*," ECF 69-1

at 12, but that simply ignores the assignments that are contemplated by the very Settlement Agreement to which URMC agreed. In fact, Mintclaim opted only itself and its own claims out of the class—following the assignments, the 389 individuals who initially had claims against URMC could not opt out on their own behalf because they had assigned their claims to Mintclaim.

Mintclaim thus did exactly what the Settlement Agreement contemplates, which makes sense in light of the agreement as a whole. By contrast, URMC's argument leads to absurd results. For instance, many Settlement Class Members have *more than one claim* against URMC because they visited URMC's patient portal and filled out forms more than once. If URMC were right, Settlement Class Members who submit otherwise valid opt outs but who have multiple claims against URMC would have their opt outs invalidated as "group" opt outs. That cannot be right. The Agreement means what it says and forbids only attempts by one party to opt out *another party*. That is not what occurred here.

URMC does not meaningfully address the text of its agreement, or the clear law authorizing assignees of claims to opt out on their own behalf. URMC relies instead on *Stark*, 2025 WL 1592736 at *16 (cited at ECF 69-1 at 11), but there the court addressed the validity of hundreds of opt outs submitted in a single mailing and held the "mass" mailing invalid because they had all been mailed by the assignee. Here, by contrast, Mintclaim is unquestionably opting out solely on its own behalf: It made that clear in the opt out submission itself, ECF. No. 69-5 at 1; it brought the Monroe County suit solely in its own name, ECF No. 69-3 at 4; and, crucially, it does

not argue that *the assignors* may bring lawsuits against URMC.

### C. URMC's Argument Conflicts with Settled Principles of Class Action Law and Administration.

As explained, URMC's argument should be rejected in light of the plain terms of the very Settlement Agreement that it signed. But URMC's argument suffers from another flaw: reading the terms of the Settlement Agreement such that they forbid Mintclaim to opt out on its own behalf would violate Mintclaim's due process rights and federal law.

URMC does not dispute that assignees must be permitted to opt out in some manner. The Settlement Agreement specifically contemplates that "assignees" of claims could be Settlement Class Members, *see* Settlement Agreement ¶ 1.17, as it must in light of the reality that federal claims are generally assignable, *see Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 275 (2008) ("[H]istory and precedent are clear [that] . . . [a]ssignees of a claim, including assignees for collection, have long been permitted to bring suit."); *John Wiley & Sons, Inc. v. DRK Photo*, 882 F.3d 394, 407 (2d Cir. 2018) (discussing *Sprint*'s "recognition of a generally permissive regime for the assignment of federal causes of action"). And URMC does not dispute that due process requires that class members be given an opportunity to opt out of settlements that extinguish their claims for money damages. *See Phillips Petroleum*, 472 U.S. at 812 (so holding). But those principles together mean that URMC's tortured reading of the ban on "group" opt outs cannot be right, because its interpretation violates federal law: there would be no way for Mintclaim or any assignee to *ever* opt out of the settlement, which they have a right to do, *id.*

URMC's argument similarly misunderstands why prohibitions on "mass" or "group" outs may be prohibited in class action settlements in the first place. Courts have explained that such a prohibition may exist to protect two only interests.

First, courts may ensure that individuals are given the individual right to make their own decision whether to opt out of a class action by requiring each individual to indicate, in a reliable and verifiable way, her individual desire to opt out of a class action. *Compare, e.g.*, *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 355 (6th Cir. 2009), *and In re Deepwater Horizon*, 819 F.3d 190, 197 (5th Cir. 2016) (upholding requirement of individual signatures), *and In re TikTok, Inc*, 565 F. Supp. 3d 1076, 1092–93 (N.D. Ill. 2021), *and In re Centurylink Sales Pracs. & Sec. Litig.*, No. CV 17-2832, 2020 WL 3512807, at *3 (D. Minn. June 29, 2020) (collecting cases), *with, e.g.*, *In re Gen. Am. Life Ins. Co. Sales Pracs. Litig.*, 268 F.3d 627, 635 (8th Cir. 2001), *judgment vacated on other grounds sub nom. Henderson v. Gen. Am. Life Ins.* Co., 536 U.S. 919 (2002), *and In re Google Assistant Priv. Litig.*, No. 5:19-CV-04286-BLF, 2025 WL 510435, at *1 (N.D. Cal. Feb. 14, 2025) (approving opt outs filed by counsel on behalf of "69,507 individuals" with only the signature of counsel where counsel declared that they represented the individuals), *and In re TikTok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 931 (N.D. Ill. 2022) (approving opt outs where "[r]ather than individually submitting their opt-out forms, these movants retained counsel who combined the opt-out forms and submitted them en masse"). Here, that interest has been served: Mintclaim is the only owner of the 389 claims at issue, and it has clearly indicated its desire to be excluded. ECF No. 69-5 at 1.

Further, although this was not necessary, each assignor in fact also individually indicated individual consent for Mintclaim to seek exclusion of the assigned claims for good measure. Harrow Decl. ¶ 4.

Second, many cases hold that a class member or lawyer may not unilaterally create subclasses by purporting to opt out a class of people bearing certain characteristics. *See, e.g.*, *Sharp Farms v. Speaks*, 917 F.3d 276, 298 (4th Cir. 2019); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998); *Berry Petroleum Co. v. Adams & Peck*, 518 F.2d 402, 411 (2d Cir. 1975); *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *9 (S.D.N.Y. Mar. 24, 2014). Again, that is not at issue here: Mintclaim owns each claim outright and has affirmative, individual authority to opt out for each assignor in any event.

All of the cases on which URMC relies, and indeed every reasoned case on this topic that counsel has found, concern only the problems of verifiable individual intent and management of subclasses. There is no reasoned authority to support the proposition URMC needs to prevail here: That parties may define the right to opt out so narrowly as to force people with valid claims to remain in a class-action settlement despite their clear intent to exclude themselves. As the court in *Google* explained, that would run afoul of the Constitution because "'[d]ue process requires . . . that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court.'" 2025 WL 510435, at *1 (quoting *Phillips Petroleum*, 472 U.S. at 812) (alteration in *Google*). Yet URMC seeks permanently to forfeit those claims through an opt out procedure

that Mintclaim *could never possibly comply with* by URMC's reasoning. By URMC's lights, opt outs are impermissible from all assignees, and also whenever a party has more than one claim, or both. That is not the law.

At least, though, URMC is transparent about its motivations: it argues for a rule of federal law effectively precluding assignees of class-action claims from opting out of class actions because URMC has an interest in the "finality" of its settlement agreement. *Cf.*, *e.g.*, ECF No. 69-1 at 14 ("The purpose of all this language [in the settlement agreement] was clear: to provide finality to the parties over the *Kane* litigation and any related claims."). Finality is surely a valid interest generally speaking. But that general interest does not permit URMC to design a settlement agreement stripping due process rights from others. Indeed, giving effect to the *Phillips Petroleum* rule and requiring potential claimholders (including assignees) be given an opportunity to opt out of class action settlements will always make the resolution of the defendant's litigation harder in some sense. *See Turkey II*, 2025 WL 1795136, at *1 (recognizing this reality). But federal law (and fundamental fairness too) requires valid opt outs be honored. *E.g.*, *id.* And anyway, recognizing the validity of the opt outs here forwards the purpose of the Wiretap Act's statutory-damages provision by permitting those not fully satisfied with the settlement payment to potentially recover additional funds. As another court held when addressing the treble-damages provision of the antitrust law, recognizing assignments forwards the law's purpose to "encourage and reward plaintiffs for their enforcement." *Turkey I*, 2024 WL 1328824, at *4. So too here.

Unsurprisingly, URMC does not agree. *E.g.*, ECF No. 69-1 at 6 (characterizing Mintclaim as having "sold these *Kane* settlement class members" on the assignment transaction, while not explaining why a transaction that necessarily left assignees with at least as much money as they would have received in the settlement could leave them worse off than either filing a settlement claim or doing nothing and having their claim extinguished without compensation). But even where "policy arguments" may "have some appeal," *Turkey II*, 2025 WL 1795136, at *1, "this Court is not the proper branch of government for Defendants' complaints . . . . Federal judges are not in the business of creating public policy for new developments in litigation that might be disfavored. That role falls to Congress, whose job it is to write the statutes and rules that govern federal litigation. Congress has not yet spoken on the matter." *Id.*

## II. IF MINTCLAIM WERE NEVER A "SETTLEMENT CLASS MEMBER," THEN THIS COURT WOULD LACK JURISDICTION

Finally, as mentioned, URMC argues that Mintclaim was "not a member of the *Kane* settlement class," ECF No. 69-1 at 9; that its "opt out was not a valid opt-out under the agreement," *id.* at 12; and that "because there was no proper exclusion, the 389 settlement class members—and Mintclaim standing in their shoes—are therefore bound by the settlement agreement and release," *id.* at 13. As explained above, this is not correct because Mintclaim was a class member until it validly opted out. But if it were correct, this Court would have no jurisdiction over Mintclaim in this Action, since Mintclaim would not be a party nor a member of the *Kane* settlement class. In that event, the court addressing Mintclaim's action would be left with a *de novo* opportunity to determine whether Mintclaim's action is barred by *res judicata*.

It is a "'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment . . . in litigation in which he is not designated as a party or to which he has not been made a party by service of process.'" *Rothstein*, 837 F.3d at 204 (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) (alteration in *Rothstein*)). And thus, in a class action, whenever parties are found not to be "'members of the Settlement Class'" they cannot be "'bound by any orders or judgments entered in respect to the settlement.'" *Id.* (quoting *Casey v. Citibank*, N.A., No. 5:12–CV–820, at *5, 2014 WL 4120599 (N.D.N.Y. Aug. 21, 2014)). In *Rothstein*, for example, a class-action defendant argued that a group of plaintiffs could not appeal a district court decision where a settlement forbade such an appeal while simultaneously contending that the group was not part of the class in the first place. *Id.* at 203. The Second Circuit "decline[d] [the defendants'] request to permit them to have their pie and eat it too." *Id.*

So too here: If Mintclaim somehow was not a Settlement Class Member even though it was specifically defined to be one by the Settlement Agreement, then the proper remedy is for this Court to deny URMC's motion for lack of jurisdiction because Mintclaim was never bound by the terms of the Settlement Agreement and surely could not be *enjoined* under that agreement. URMC's only basis for invoking this Court's jurisdiction is its retention of authority to do so under the settlement agreement. ECF No. 69-1 at 8–9. Mintclaim does not contest that this Court retained authority *to enforce the agreement*; Mintclaim consents to jurisdiction of the magistrate court to decide URMC's motion; and Mintclaim does not contest that, *if it*

*was a party to the Settlement Agreement* before it opted out, then this Court has authority to decide this motion without requiring that Mintclaim be separately served with process. But if URMC is right that Mintclaim was not a party to the agreement, Mintclaim may not be haled to Court for an injunction at all: Mintclaim was never served with process; URMC articulates no federal cause of action against Mintclaim; and Mintclaim is not a party to this Action. So if this Court agrees with URMC that Mintclaim is excluded from the definition of Settlement Class Members even though that definition explicitly includes "assignees" of people with claims against URMC, this Court should simply deny the motion because it lacks any authority to issue an order that binds non-party Mintclaim Partners LP.

## III. CONCLUSION

For the foregoing reasons, this Court should hold that Mintclaim validly opted out of the Settlement Class in this Action and deny URMC's motion. In the alternative, this Court should hold that it lacks jurisdiction over Mintclaim and deny URMC's motion.

Respectfully submitted,

/s/ Jeremy Shur
Jeremy Shur
Charles Gerstein
(*pro hac vice* pending)
GERSTEIN HARROW LLP
401 Park Ave. S. 10th Floor
New York, NY 10016
charlie@gerstein-harrow.com
(202) 670-4809

Jason Harrow
(*pro hac vice* pending)
GERSTEIN HARROW LLP

12100 Wilshire Blvd Ste. 800
Los Angeles, CA 90025
(323) 744-5293

*Attorneys for Non-Party Mintclaim Partners LP*