**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CAROL KANE and BONNIE WILSON, individually and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | Case No. 6:23-cv-06027 |
| v. | ) | The Honorable Mark W. Pederson, Magistrate Judge |
| UNIVERSITY OF ROCHESTER, | ) | |
| Defendant. | ) | |

**REPLY BRIEF IN SUPPORT OF MOTION**
**TO ENJOIN MINTCLAIM PARTNERS L.P.**

David Carney
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Email: dcarney@bakerlaw.com

*Attorney for Defendant University of Rochester*

## TABLE OF CONTENTS

**INTRODUCTION**......................................................................................................**1**

1. *Every member of the Settlement Class had the opportunity to opt out*..........................4

2. *This Court has authority to enjoin Mintclaim Partners from further prosecution of the URMC complaint*.............................................................................................6

3. *Mintclaim's agreement with Settlement Class Members violates New York law* .........8

**CONCLUSION** ......................................................................................................**10**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011)..........................................................................................8

*Berry Petroleum Co. v. Adams and Peck*,
518 F.2d 402 (2d Cir. 1975)..........................................................................................5

*Broder v. Brasselle*,
7 Misc.2d 13 (Sup. Ct. New York Cty. 1957) ..............................................................8

*by Cohen v. S.A.C. Trading Corp.*,
711 F.3d 353 (2d Cir. 2013)..........................................................................................5

*Carvel Corp. v. Diversified Mang't Grp., Inc.*,
930 F.3d 228 (2d Cir. 1991)..........................................................................................2

*Continental Ins. Co. v. Atlantic Cas. Ins. Co.*,
603 F.3d 169 (2d Cir. 2010)..........................................................................................1

*Fuld v. Palestine Liberation Org.*,
606 U.S. 1 (2025)..........................................................................................................7

*IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*,
40 N.Y.3d 277 (2023) ...................................................................................................2

*Liberty USA Corp. v. Buyer's Choice Ins. Agency LLC*,
386 F. Supp. 2d 421 (S.D.N.Y. 2005)............................................................................2

*Morgan Munitions Supply Co. v. Studebaker Corp. of Am.*,
226 N.Y. 94 (1919) ....................10

*New York State Workers' Compensation Board v. Compensation Risk Mang'rs, LLC*,
67 N.Y.S.3d 792 (Sup. Ct. Albany 2017) ....................7

*Nomura Home Equity Loan, Inc., Series 2006 FM2 v. Nomura Credit & Cap., Inc.*,
30 N.Y.3d 572 (2017) ....................2

*Ranson v. Cutting*,
188 N.Y. 447 (1907) ....................8

*Rothstein v. American International Group, Inc.*,
837 F.3d 195 (2d Cir. 2016)....................6

*Taylor-Burns v. AR Resources, Inc.*,
268 F. Supp. 3d 592 (S.D.N.Y. 2017)....................10

*In re Turkey Antitrust Litig.*,
727 F. Supp. 3d 756 (N.D. Ill. 2024) ....................9

**Rules, Statutes & Other Authorities**

18 U.S.C. § 2520....................9

N.Y. JUDICIARY ACT § 488 ....................8, 9, 10

18 N.Y. JUR. 2d CHAMPERTY AND MAINTENANCE § 3 ....................8

N.Y. RULES OF PROF. COND. RULE 1.8 ....................9

## INTRODUCTION

The entire premise of Mintclaim's opposition brief, stated in many different ways, is that Mintclaim Partners LP—a Washington, D.C. limited partnership first formed in May 2025—is in fact a "Settlement Class Member" in this case. (Dkt. # 79, *Opp. Br.*, at pg. 1-2, 7-10.)

Mintclaim claims this is so because the definition of the term "Person" in the Revised Settlement Agreement includes "assignees," and Mintclaim is the "assignee" of actual *Kane* settlement class members. (*Id.*, at pg. 1, 2, 5, 9-10.)

This reading of the Revised Settlement Agreement violates basic rules of contract interpretation. To begin, that contracts are interpreted according to their plain text. *See, e.g., Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) ("the best evidence of intent is the contract itself; if an agreement is complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms") (quotation omitted).

The Revised Settlement Agreement defines the term "Settlement Class Member" simply: "Settlement Class Member means any Person ***who falls within the definition of the Settlement Class***." (Dkt. # 44, *Revised settlement agreement*, ¶ 1.25 (emphasis added).)

The definition of the term "Settlement Class" thus controls who is or is not a member of the *Kane* settlement class. And, on this point as well, the Revised Settlement Agreement is clear. The Settlement Class is limited to individuals only: "Settlement Class means: (i) all *individuals* who accessed or otherwise used URMC's MyChart patient portal between January 11, 2021 and January 11, 2023; and (ii) all *individuals* who filled out forms on URMC's public website between January 1, 2018 and June 12, 2023." (*Id.*, ¶ 1.25 (emphasis added); *see also id.* ("[t]he Settlement Class consists of approximately 699,406 *individuals*") (emphasis added).)

The definition of the term "Settlement Class Member" thus does not include a limited partnership. Rather, it is limited to individuals who are part of the *Kane* settlement class. *See also,*

*e.g., IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, 40 N.Y.3d 277, 285 (2023) ("We have long held that 'when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.'") (quoting *Nomura Home Equity Loan, Inc., Series 2006 FM2 v. Nomura Credit & Cap., Inc.*, 30 N.Y.3d 572, 581 (2017)).

Two additional points of contract interpretation bear mentioning, for the avoidance of any potential doubt on how the Revised Settlement Agreement should be read. ***First***, Mintclaim's proposed interpretation of the agreement would render the language "falls into the definition of the Settlement Class" meaningless, contrary to the "bedrock principle" that "every word and clause in the contract should be given meaning." *IKB Int'l, S.A.*, 40 N.Y.3d at 298; *see also Nomura,* 30 N.Y.3d at 581 ("a contract must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect") (quoting *Ronnen v. Ajax Motor Corp.*, 88 N.Y.2d 582, 589 (1996)).

This is not the case for the term "Person," which is also used in the agreement to define the scope of the release. (Dkt. # 44, *Revised settlement agreement*, ¶ 1.19 (defining the term "Related Entities" to include "any Person related to such any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation"); *id.*, ¶ 1. 25 (defining "Released Persons" to mean "the University and its Related Entities, including URMC").)

***Second***, Mintclaim's proposed interpretation would violate the rule that "[u]nder New York law, instruments executed at the same time, by the same parties, for the same purpose and in the course of the same transaction will be read and interpreted together." *Carvel Corp. v. Diversified Mang't Grp., Inc.*, 930 F.3d 228, 233 (2d Cir. 1991); *Liberty USA Corp. v. Buyer's Choice Ins. Agency LLC*, 386 F. Supp. 2d 421, 425 (S.D.N.Y. 2005) ("where several instruments

constitute part of the same transaction, they must be interpreted together") (quoting *BWA Corp. v. Alltrans Exp. U.S.A., Inc.*, 493 N.Y.S.2d 1, 3 (1st Dep't 1985)).

The Revised Settlement Agreement is one piece of a broader transaction. The parties' settlement agreement must be preliminarily and then finally approved by the Court. This includes the settlement notice program documents, which were made exhibits to the agreement. (Dkt. # 39-3, *Settlement agreement exhibits*, at pgs. 36-62; Dkt. # 45, *Preliminary approval order*, at pgs. 1-2; Dkt. # 64, *Final approval order*, ¶ 2 ("The Court expressly incorporates in this Final Approval Order and makes a part hereof the Settlement Agreement and Exhibits.").)

Each of these documents defines the Settlement Class the same way as the Revised Settlement Agreement. The parties' long form notice answered the question "Who is included in the Settlement?" this way: "The Settlement Class includes everyone who (1) accessed or otherwise used URMC's MyChart patient portal between January 11, 2021, and January 11, 2023, or (2) filled out forms on URMC's public website between January 1, 2018, and June 12, 2023." (Dkt. # 39-3, *Settlement agreement,* Ex. B, at pg. 4); *see also id.,* Ex. A (short form notice), at pg. 2 (same); *id.* at Ex. C (settlement claim form), at pg. 1 (same).)

The Court's preliminary approval order certified the following "Settlement Class": "(i) all individuals who accessed or otherwise used URMC's MyChart patient portal between January 11, 2021 and January 11, 2023; and (ii) individuals who filled out forms on URMC's public website between January 1, 2018, and June 12, 2023." (Dkt. # 45, *Preliminary approval order*, ¶ 24.)

The Court's final approval order was the same; the Court granted "final certification to the Settlement Class, which is defined as follows: (1) all *individuals* who accessed or otherwise used URMC's MyChart patient portal between January 11, 2021, and January 11, 2023; and (2) all

*individuals* who filled out forms on URMC's public website between January 1, 2018, and June 12, 2023." (Dkt. # 64, *Final approval order*, ¶ 12 (emphasis added).)

Thus, there is no colorable interpretation of the Revised Settlement Agreement, the notice program documents, or the Court's preliminary and final approval orders that Mintclaim Partners is a "Settlement Class Member" in this case, because Mintclaim does not fall within the definition of the "Settlement Class." (Dkt. # 44, *Revised settlement agreement*, ¶ 1.25.)

This should conclusively end the matter: Mintclaim is not a Settlement Class Member, the individuals who are Settlement Class Members and assigned their claims to Mintclaim did not validly opt out, and thus also Mintclaim, as an assignee, remains bound by *their* release. (Dkt. # 64, *Final approval order*, ¶ 25 ("[t]he Court declares that the Settlement Agreement and the Final Approval Order shall be binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings against the University involving Released Claim(s)," and "shall also be binding on Plaintiffs and the Settlement Class *and their respective successors and assigns*") (emphasis added).

The University respectfully submits the remainder of this reply brief to briefly address the following three points:

***1. Every member of the Settlement Class had the opportunity to opt out.***

Mintclaim argues "due process requires that class members be given an opportunity to opt out of settlements that extinguish their claims for money damages." (Dkt. # 79, *Opp. Br.*, at pg. 15 (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)).

The University agrees, and this is what happened here. Every settlement class member was given the right to opt out of the settlement. (Dkt. # 44, *Revised settlement agreement*, ¶ 5.1 (Opt-Out Method) & ¶ 5.2 (Opt-Out Effect); Dkt. # 45, *Preliminary approval order*, ¶ 34 ("A settlement class member may request exclusion from the Settlement at any time prior to the Claims Deadline,"

provided that "the opt-out notice sent to the Settlement Administrator in accordance with the procedures set forth in the Revised Settlement Agreement.").)

Every settlement class member was expressly informed of this opt out right and how to exercise it. (Dkt. # 39-3, *Short form notice*, at pg. 2; *id.* at pg. 6 ("Excluding Yourself from the Settlement"); Dkt. # 69-4, *Website FAQs*, at pg. 7 ("How do I opt out of the Settlement?").)

Twelve settlement class members validly exercised these opt out rights. (Dkt. # 56-3, *Amy Lechner Declaration*, ¶ 22 & Ex. F; Dkt. # 64, *Final approval order*, ¶ 14.) No one else did, including the three-hundred eighty-nine purported assignors of their claims to Mintclaim. (Dkt. # 69-5, *Mintclaim request for exclusion*.) Their opt outs were not individually signed, and they were submitted *en masse* by Mintclaim, contrary to the two basic requirements contained in the Revised Settlement Agreement. (Dkt. # 44, *Revised settlement agreement*, ¶ 5.1 (Opt Out Method).)

Mintclaim argues the Court should waive these requirements, because "although this was not necessary, each assignor in fact also individually indicated individual consent for Mintclaim to seek exclusion of the assigned claims for good measure." (Dkt. # 79, *Opp. Br.*, at 17.) Mintclaim presents no competent evidence of this alleged individual consent, however, instead citing only to a single hearsay statement from one of Mintclaim's own counsel. (Dkt. # 79-1, *Decl.*, ¶ 4.)

These types of unbuttressed assertions are precisely the reason for why group and mass opt outs are prohibited in the first instance, as the Second Circuit has held. *See Berry Petroleum Co. v. Adams and Peck*, 518 F.2d 402, 412 (2d Cir. 1975), *abrogation on other grounds recognized by Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 363 (2d Cir. 2013) (holding district court properly rejected class opt-out from settlement; "[w]e agree with Judge McFadden that to allow such action would lead to chaos in the management of class actions," and "[t]he only way to avoid such chaos

is to require that opting out of a class action, like the decision to participate in it, *must be an individual decision*") (emphasis added).

***2. This Court has authority to enjoin Mintclaim Partners from further prosecution of the URMC complaint*.**

Mintclaim next argues that "[i]f Mintclaim was somehow not a Settlement Class Member," then the "proper remedy is for this Court to deny URMC's motion for lack of jurisdiction because Mintclaim was never bound by the terms of the Settlement Agreement and surely could not be *enjoined* under that agreement." (Dkt. # 79, *Opp. Br.*, at pg. 20 (emphasis in original).)

Mintclaim cites the Second Circuit's decision in *Rothstein v. American International Group, Inc.*, 837 F.3d 195 (2d Cir. 2016), to support this argument. *Rothstein*, however, dealt with a different situation. There, certain AIG employee retirement benefit plans attempted to participate in a series of AIG securities fraud settlements. The settlement administrator determined their claims were barred under the agreement because they were "affiliates" of AIG. The district court affirmed this determination. *Id.* at 201-02.

On appeal, the lead plaintiffs argued the plans did not have standing to appeal the district court's determination because they were bound by a non-appealability provision contained in the settlement agreement. *Id.* at 203. The Second Circuit rejected this argument, holding that because "[t]he Plans have not yet been held to be members of the Settlement Class they cannot be bound by any orders or judgments entered in respect to the settlement." *Id.* At the same time, however, the Second Circuit allowed the plans to appeal the settlement administrator's denial of their claim, as "a nonparty may appeal if it has an interest affected by the judgment." *Id.*

*Rothstein* thus did not involve the assignment of claims in connection with a class action settlement. Contrary to Mintclaim's argument, the case also shows how the Court's jurisdiction over these settlements can extend to non-parties when they insert themselves into the process.

Such is the case here. The injunction is appropriate because the individual *Kane* settlement class member's claims are barred by the Revised Settlement Agreement's release, and under New York law Mintclaim stands in their shoes and has no greater rights: "It is elementary ancient law that an assignee never stands in any better position than his (or her) assignor." *New York State Workers' Compensation Board v. Compensation Risk Mang'rs, LLC*, 67 N.Y.S.3d 792, 802 (Sup. Ct. Albany 2017) (quoting *Matter of International Ribbon Mills (Arjan Robbins)*, 36 N.Y.2d 121, 126 (1975)). *See also* Dkt. # 65, *Final approval order*, ¶ 22 ("The Release is provided pursuant to New York law and shall be construed under New York law.").)

Mintclaim is thus as equally as bound by the settlement and the release as the settlement class members themselves. Moreover, Mintclaim does not and cannot contest the Court's jurisdiction over Mintclaim generally. Mintclaim voluntarily inserted itself into these proceedings by soliciting *Kane* settlement class members to assign their claims. As Mintclaim's counsel states: "In July 2025, through a contractor that I supervised, Mintclaim reached out via online advertising to individuals who may have been harmed by URMC's disclosure of their private information seeking to acquire assignments of their claims against URMC." (Dkt. # 79-1, *Harrow Decl.*, ¶ 2.) *Compare Fuld v. Palestine Liberation Org.*, 606 U.S. 1, 12-13 (2025) (for purposeful availment jurisdiction, the defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State") (quoting *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021)).

In this situation, the Second Circuit authority—which Mintclaim also does not address—is clear: this Court has the authority to enforce the Court's settlement agreement and final approval order, in order to protect the integrity of the Court's final approval order and the parties' settlement by an issuing an injunction to prevent further litigation that is being prosecuted in violation of the

settlement agreement's release. *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011) (holding "[a] district court therefore 'has the power to enforce an ongoing order against relitigation so as to protect the integrity of a complex class settlement over which it retained jurisdiction.'") (quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 367-68 (3d Cir. 2001)). *See also* Dkt. # 69, *Mem. in Supp.*, at pg. 15 (collecting cases).

***3. Mintclaim's agreement with Settlement Class Members violates New York law*.**

There is one further point that bears responding to, as Mintclaim raised it. (Dkt. # 79, *Opp. Br.*, at pgs. 10-11.) New York law has long prohibited attorneys from buying and selling litigation claims. The prohibition is now found in New York Judiciary Act § 488, which provides as follows: "An attorney or counselor shall not: 1. Directly or indirectly, buy, take an assignment of or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bring an action thereon." N.Y. JUDICIARY ACT § 488.

As one authority interpreting the law puts it: "When the purpose of the purchase of a claim is to bring an action thereon, and the purchase is induced by the procurement of an attorney, it comes within the statute, whether the transfer is taken in the name of the attorney or of another person." 18 N.Y. Jur. 2d CHAMPERTY AND MAINTENANCE § 3; *Ranson v. Cutting*, 188 N.Y. 447, 452 (1907) (interpreting predecessor statute to Judiciary Act § 488; "The purpose of section 74 of the Code of Civil Procedure is to prevent an attorney from encouraging, instigating or promoting ill-feeling and strife, and thereby securing the ownership or control of a demand of any kind for the purpose of bringing an action thereon."); *Broder v. Brasselle*, 7 Misc.2d 13, 14-15 (Sup. Ct. New York Cty. 1957) ("It is plain that the taking of an assignment of a claim by an attorney, as here alleged, for the purpose of suit and with the intent of bringing suit, is unlawful.").

Mintclaim attempts to paint themselves as some conscientious objector to class action settlements. (Dkt. # 79, *Opp. Br.*, at pg. 4.) *They are taking 90 percent of any recovery on the alleged Kane settlement class member claims*. (Dkt. # 69-3, *Mintclaim complaint*, ¶ 69.) This is plainly attorneys trading and selling on litigation in order to make a profit in violation of New York's long-standing public policy against this very practice.

Mintclaim nonetheless argues Judiciary Act § 488 does not apply because only the assignment of a federal claim is at issue, and the assignment of federal claims is governed by federal law. (Dkt. # 79, *Opp. Br.*, at pgs. 10-11 (collecting cases).) Claims under both New York and federal law survived the University's motion to dismiss, however. (Dkt. # 24, *Dec. & Ord.*, at pg. 37.) Mintclaim does not argue that New York law does not govern the assignment of New York state law claims made by a plaintiff residing in New York.

Moreover, none of Mintclaim's cited cases analyze the specific federal preemption of a specific state criminal statute designed to act upon and regulate the conduct of attorneys. That is a different analysis than the type of choice of law analysis conducted in Mintclaim's cited cases. Indeed, under Mintclaim's logic, the New York ethical rules for attorneys do not apply, at least when it comes to the assignment of federal claims. *But cf.* N.Y. RULES OF PROF. COND. RULE 1.8(i) (providing that "a lawyer shall not acquire a proprietary interest or subject matter of the litigation the lawyer is conducting for a client").

Mintclaim points to no overriding federal interest that would compel this result. Indeed, the federal Wiretap Act itself is entirely silent as to the assignability of claims under the statute, 18 U.S.C. § 2520, and the general rule—under both New York and federal law—is that personal injury claims are not assignable. *See, e.g.,* N.Y. GEN. OBL. LAW § 13-101(1); *Stark v. Patreon, Inc.*, 2025 WL 1592736, at *21-23 (N.D. Cal. June 5, 2025) (collecting cases.)

This general rule is recognized in even Mintclaim's cited cases. *E.g., In re Turkey Antitrust Litig.*, 727 F. Supp. 3d 756, 763 (N.D. Ill. 2024) ("[a]n assignment of a claim against a third person or a bargain to assign such a claim is illegal and ineffective if the claim is for . . . (d) damages for an injury the gist of which is to the person rather than to the property, unless the claim has been reduced to judgment") (quoting Restatement (First) of Contracts § 547(1)(d)).

The Southern District of New York has also applied Judiciary Act § 488 to bar a federal statutory claim. *Taylor-Burns v. AR Resources, Inc.*, 268 F. Supp. 3d 592, 598-99 (S.D.N.Y. 2017) (applying statute to Fair Debt Collection Practices Act claim where attorneys indirectly secured claim through a separate but related entity; "Through the RC Law Agreement and CS360 Agreement, RC Law Group has directly or indirectly taken over an interest in the Burns' cause of action, which is prohibited by the champerty laws of New York."); *cf. Morgan Munitions Supply Co. v. Studebaker Corp. of Am.*, 226 N.Y. 94, 99 (1919) ("No person can maintain an action to which he must trace his title through his own breach of the law.").

## CONCLUSION

The Court should grant the motion to enjoin.

Dated: October 24, 2025

Respectfully submitted,

*/s/ David Carney*

David Carney
BAKER & HOSTETLER LLP
127 Public Square, Suite 2000
Cleveland, Ohio 44114
Telephone: (216) 621-0200
Facsimile: (216) 696-0740
Email: dcarney@bakerlaw.com

*Attorney for Defendant University of Rochester*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on October 24, 2025, a true and correct copy of the foregoing *Reply Brief in Support of Motion to Enjoin* was served on counsel of record via the Court's electronic filing system.

*/s/ David Carney*
*Counsel for Defendant University of Rochester*